GACESA *v.* CONSUMERS POWER CO.

1. MASTER AND SERVANT—WITNESSES — WAIVER — CROSS-EXAMINATION AS TO MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.
   In proceedings under the workmen's compensation act for the accidental death of plaintiff's husband while in defendant's employ, where plaintiff called defendant's foreman as a witness and interrogated him as to the employment of deceased, the statute prohibiting testimony as to matters equally within the knowledge of the deceased was waived, and the witness was subject to cross-examination as to further details of the employment of deceased, including instructions and orders given to him.

2. SAME—WORKMEN'S COMPENSATION ACT—CERTIORARI—QUESTIONS REVIEWABLE.
   Ordinarily, on certiorari to review an award by the department of labor and industry under the workmen's compensation act, the Supreme Court will not consider the rulings of the department on the admissibility of testimony, where there is competent testimony to sustain its findings.

3. SAME—ADMISSION AND REJECTION OF TESTIMONY—REVIEW.
   Where undisputed controlling testimony was improperly

As to what injuries arise out of and in the course of the employment, see notes in L. R. A. 1916A, 40, 232; L. R. A. 1917D, 114.

As to whether accident occasioned by adoption of dangerous method of doing work is an injury arising out of and in the course of the employment, see note in 7 B. R. C. 137.

rejected by the department, and there was no testimony to support its findings, it is the duty of the Supreme Court on certiorari to review an award, to consider such testimony and apply the proper rules of law.

4. SAME—SUPREME COURT TO DECIDE QUESTIONS OF LAW.

While the Supreme Court will not weigh and measure conflicting testimony, yet where there is no conflict, and where but one inference may legitimately be drawn from the testimony, the question becomes one of law which, upon certiorari, the court is bound to decide.

5. SAME—PROHIBITED ACT—ACCIDENT ARISING OUTSIDE OF SPHERE OF EMPLOYMENT DID NOT ARISE OUT OF AND IN COURSE OF EMPLOYMENT.

Where an accident resulting in the death of an employee occurred when he was in a place where, by the orders of his employer, he was prohibited from going, and while he was doing an act which, by orders of his' employer, he had been prohibited from doing, the accident did not arise out of and in the course of his employment, within the meaning of the workmen's compensation act.

6. SAME—EMPLOYER MAY LIMIT SPHERE OF EMPLOYMENT OF EMPLOYEE.

An employer has the right to limit the sphere of employment of the employee and to prohibit him from working in places dangerous to life and limb, and, with certain exceptions, where the sphere of employment has been fixed by the employer he may not be required to respond in compensation where the accident occurs outside said sphere.

Certiorari to Department of Labor and Industry. Submitted April 28, 1922.    (Docket No. 67.)    Decided November 2, 1922.

Anna Gacesa (Gotches) presented her claim for compensation against the Consumers Power Company for the accidental death of her husband in defendant's employ.    From an order awarding compensation, defendant brings certiorari.    Reversed, and order vacated.

*Walter D. Kline* (*Mechem, Onen & Mechem,* of counsel), for appellant.

*R. G. Leitch,* for appellee.

FELLOWS, C. J.     Defendant in June, 1921, was doing certain construction work at its plant in Battle Creek.     Plaintiff's husband, a painter, was in its employ.     He met with an accident on June 17th, resulting in his death, for which compensation was awarded plaintiff.     A detailed statement of the facts will be presently made.     The foreman of defendant, Mr. Howard, was called by plaintiff as a witness and interrogated as to the employment of deceased, his wage, and the circumstances of his death.     Upon cross-examination of this witness, over objection of plaintiff's counsel, defendant was permitted to put into the record further details of the employment of deceased including instructions and orders given him.     The department of labor and industry declined to consider this testimony on the ground that it was equally within the knowledge of the deceased and that the statute had not been waived by plaintiff in calling Mr. Howard as her witness.     This ruling presents the first question in the case.     We think the department of labor and industry entertained an erroneous view. Plaintiff had called Mr. Howard as a witness and had interrogated him upon a subject equally within the knowledge of deceased, *i. e.,* the employment of deceased, his duties, that he was under the direction of the witness.     Having done this the mouth of the witness could not be closed when he was interrogated further on the subject he had testified about on direct-examination.     *Smith's Appeal,* 52 Mich. 415; *Beardslee* v. *Reeves,* 76 Mich. 661; *Lilley* v. *Insurance Co.,* 92 Mich. 153; *Fox* v. *Barrett's Estate,* 117 Mich. 162. In the last cited case it was said by Mr. Justice HOOKER, speaking for the court:

"There would be little justice in so construing the statute as to permit counsel for the estate to prove a part of a transaction by the claimant's own testimony, and then close the mouth of the witness as to the remainder. That seems to be what was attempted in this case. The court correctly held that, when a subject is gone into under such circumstances, it may be explained fully by the witness on redirect-examination; and we are of the opinion that the case before us was within the rule."

It is also evident that the department of labor and industry concluded that the testimony of defendant's timekeeper was prohibited by the statute. This conclusion is of doubtful propriety (*Brennan* v. *Railroad Co.*, 93 Mich. 156; *Storrie* v. *Elevator Co.*, 134 Mich. 297), but as the testimony of the timekeeper was only cumulative of that given by Mr. Howard, we may pass the question. We do not ordinarily consider the rulings of the department on the admissibility of testimony where there is competent testimony to sustain its finding. We should not here if there was any competent testimony to support the findings. But the rejected testimony here is not only undisputed by any testimony in the record or by any legitimate inference which might be drawn from the testimony in the record but it is corroborated by all the testimony in the record bearing on the subject. Where undisputed controlling testimony is improperly rejected by the department of labor and industry and the case is brought here on certiorari our duty is to consider such testimony and apply the proper rules of law to the undisputed facts. We do not weigh and measure conflicting testimony but where there is no conflict in the testimony, where it is all one way, where there is nothing in any way inconsistent in it, where but one inference can legitimately be drawn from it, the question then becomes one of law which upon certiorari we are bound to decide.

As some of the statements in the findings of the department of labor and industry are without evidential support, we deem it unnecessary to quote the findings, but will state the undisputed facts established by the record. The construction work defendant was doing at Battle Creek included work in the plant and work in what is called an "outdoor substation." This outdoor substation was inclosed by a fence and was about 200 feet long by about 75 feet wide. It was divided into what are called "bays," three in number. These bays are not separated by partitions or fences but are distinctly marked, the lines being vertical steel towers and horizontal girders with an intervening space between them of about 15 feet. Within these bays are placed numerous electrical appliances which are highly dangerous when the current is on. There were some of the fixtures and appliances about the plant which the company desired to have painted, and some it did not desire painted. Among the latter were the transformers which it desired to repair before painting. Deceased was not originally employed by Mr. Howard but was placed under his direction on a Wednesday noon. Before this he had painted on the inside of the plant. The work he was to do under Mr. Howard's direction was in the bays. Before beginning this work Mr. Howard fully cautioned him of the dangerous character of the appliances and warned him not to do work in any other place than where he ordered him to. We quote from his testimony:

"*Q.* Mr. Leitch asked you if Mr. Gacesa was supposed to paint both of those storage tanks. What did you tell him to paint?

"*A.* The transfer device and storage tank near the west fence.

"*Q.* What other instructions did you give him?

"*A.* On completing the transfer device he was to begin work on the storage tank and not to touch any-

thing without seeing me and to report in the morning before touching anything and to check out before going home at night.

"*Q.* By reporting you meant to report to you?

"*A.* Yes, sir, so I could see him before he went to work or in case any changes were made.

"*Q.* What if anything did you tell him about the devices in the adjoining bays?

"*A.* That they were energized and a person might be killed by coming in contact with the devices in there and to keep out of them. I showed him the line of towers.

"*Q.* Where were you when you told him that?

"*A.* Right by the side of them.

"*Q.* Right on the dividing line?

"*A.* Yes, sir.

"*Q.* What reply, if any, did he make?

"*A.* All right or words similar to that.

"*Q.* When did you have this talk?

"*A.* Wednesday noon before noon.

"*Q.* Before he started any work at all?

"*A.* Yes, sir."

A totally disinterested witness testified to hearing a similar conversation on the evening before, and the timekeeper testified that on Friday morning, the morning of the accident, he told deceased not to go to work until he saw Mr. Howard, and that deceased replied, "All right, I will get my paint ready." Before deceased began his work in the outdoor substation the current was turned off of the appliances in bay No. 3, and he received the instructions above set forth and went to work in that bay. The work in bay No. 3 was completed Thursday night. On Friday morning deceased arrived about 5 minutes before 7 (7 o'clock being his time to commence work), and the conversation with the timekeeper above related took place. Mr. Howard arrived 2 or 3 minutes after 7 but saw nothing of deceased although he looked for him. Some time between 7 and 7:30 deceased was found at the foot of a ladder which had been set up against

a transformer 15 feet high in bay 2, some 3 or 4 rods distant from bay 3 where he had been directed to work. There was evidence of fresh paint on the transformer. Deceased had sustained a fractured skull by contact with the cement floor and there was evidence on his body that he had come in contact with an electric current. He died shortly thereafter.

We, therefore, have before us the question of whether an accident arises out of and in the course of the employment where it occurs when the employee is in a place where he is by the orders of his employer prohibited from going, and when he is doing an act which he has by orders of his employer been prohibited from doing. The courts of this country have not dealt with this question with any degree of frequency. We shall presently refer to some of the American decisions. The question has been before the courts of England under a statute containing like language to ours, and from which statute the language of our statute is taken. We have examined the following English cases: *Whitehead* v. *Reader* (1901), 2 K. B. 48; *Weighill* v. *South Heaton Coal Co., Ltd.*, 4 B. W. C. C. 141; *Jenkinson* v. *Harrison, Ainslie & Co., Ltd., id.* 194; *Harding* v. *Brynddu Colliery Co., Ltd., id.* 269; *Traynor* v. *Robert Addie & Sons, id.* 357; *Conway* v. *Pumpherston Oil Co., Ltd., id.* 392; *Barnes* v. *Nunnery Colliery Co., Ltd., id.* 43 (Court of Appeal), and same case, 5 B. W. C. C. 195 (House of Lords); *Mawdsley* v. *West Leigh Colliery Co., Ltd.*, 5 B. W. C. C. 80; *Parker* v. *Hambrook, id.* 608; *Plumb* v. *Cobden Flour Mills Co., Ltd.*, 6 B. W. C. C. 245 (Court of Appeal), and same case 7 B. W. C. C. 1 (House of Lords); *Tomlinson* v. *Garratt's, Ltd.*, 6 B. W. C. C. 489; *M'Diarmid* v. *Ogilvy Bros., id.* 878; *Hopley* v. *Pool, Lorrimer & Tabberer*, 8 B. W. C. C. 512; *Herbert* v. *Samuel Fox & Co., Ltd., id.* 94 (Court of Appeal), and same case 9 B. W. C. C. 164 (House of Lords).

We have considered all of these English cases but can not within the compass of this opinion discuss them all. The importance of them, or at least the importance of those which antedate our statute, will be apparent when we consider the fact that they construe the language of the English act, which language we have adopted and written into our statute.

The language of Collins, L. J., in the early case of *Whitehead* v. *Reader, supra* (decided in 1901), has been so frequently quoted and cited by the courts of England that we first call attention to it. In stating the rule he there said:

"I agree in what has already been pointed out, that it is not every breach of a master's orders that would have the effect of terminating the servant's employment so as to excuse the master from the consequences of the breach of his orders. We have to get back to the orders emanating from the master to see what is the sphere of employment of the workman, and it must be competent to the master to limit that sphere. If the servant acting within the sphere of his employment violates the order of his master, the latter is responsible. It is, however, obvious that a workman cannot travel out of the sphere of his employment without the order of his employer to do so; and if he does travel out of the sphere of his employment without such an order, his acts do not make the master liable either to the workman under the workmen's compensation act, 1897, or to third persons at common law."

An English case recognized by the courts as one very near the border line is *Plumb* v. *Cobden Flour Mill Co., Ltd., supra.* Cozens-Hardy, M. R., in determining the question in the court of appeal, had this to say:

"It is not enough to say that the workman was doing his job, and that so long as he was doing it for his master's interest it did not matter what method or by what means he does it. I prefer to decide the case not so much on the ground that what the man

did was unreasonable, as on the ground that what he did was something altogether outside the scope of his employment. He was not employed to heap these sacks together by any means or by any method that he thought fit, but in a particular way, and there was no justification for using a new method which would substantially enlarge the scope of his employment."

Upon review of the case in the house of lords, it was said by Viscount Haldane, L. C.:

"I pause here to notice an ingenious argument proposed by Mr. Davenport, founded on the cases I have cited. Founding on the cases of *Conway* and *Harding* (*supra*), he said, If this man had been told not to touch this shaft he would have received compensation, for he was doing his master's work, and it would have been merely disobedience. Why should he be worse off because he was told nothing about the shaft? The fallacy of this consists in not adverting to the fact that there are prohibitions which limit the sphere of employment, and prohibitions which only deal with conduct within the sphere of employment. A transgression of a prohibition of the latter class leaves the sphere of employment where it was, and consequently will not prevent recovery of compensation. A transgression of the former class carries with it the result that the man has gone outside the sphere."

Another interesting case is *Barnes* v. *Nunnery Colliery Co., Ltd., supra,* decided before our statute was adopted. In this case there was dissent both in the court of appeal and in the house of lords, the majority in both instances denying liability. The workman was killed while riding in an empty tub on an endless rope in the pit where he was employed. There was a rule forbidding the practice; it had been violated but without the employer's knowledge. In denying liability in the court of appeal the master of the rolls, Cozens-Hardy, said:

"Having listened with attention to the arguments, I am driven to the conclusion that the decision of the county court judge cannot be supported. With great

respect, we must carefully distinguish between any negligent doing of what was authorized, and doing something wholly unauthorized."

In the house of lords, the principal opinion was delivered by Lord Atkinson.   He said:

"The judgment of the court of appeal was, I think, right.    The county court judge is, in such cases as this, the sole judge of fact, and where evidence is given before him upon which he could, as a reasonable man, find on any issue of fact, his decision must be upheld; but where all the evidence given before him clearly shows that the injury causing the workman's death was the result of a risk not incidental to the workman's employment, then his finding that the injury did arise out of the employment binds nobody, because it is a finding made without any evidence to support it, and can not be allowed to stand.   *   *   *
"The unfortunate deceased lost his life from the new and added peril to which by his own conduct he exposed himself, not to any peril which his contract of service, directly or indirectly, involved or at all obliged him to encounter.    It was not, therefore, reasonably incidental to his employ.    That is the crucible test which has been many times adopted."

Another English case which reached the house of lords is *Herbert* v. *Samuel Fox & Co., Ltd., supra.* The case, however, was decided since our statute was enacted.    The employee in that case was employed in shunting operations to walk in front of moving wagons to keep a proper lookout.    He was forbidden to ride on the wagons.    He violated this instruction and rode on the buffer of the front wagon and received serious injuries.    It was held that he was without the sphere of his employment and that the accident did not arise out of and in the course of his employment.    In the house of lords there was dissent. Lord Atkinson in delivering the principal opinion said:

"Rules such as this are, I think, made more to save

the lives and limbs of workmen than the pockets of employers. And, speaking entirely for myself, I may say that, I think an ill-service is done to the working classes in permitting such rules as these to be disregarded; in that it slackens discipline, and encourages carelessness and rashness, from which they themselves are the greatest sufferers."

The opinions of the house of lords in this case are reported in 12 N. C. C. A. 469, where an exhaustive and valuable note will be found.

In *Parker* v. *Hambrook, supra,* the employee was employed to get flints on the surface or just below the surface of a quarry. He was instructed not to go into a trench 11 feet deep. He went into the trench to get flints and was injured. It was held that the accident did not arise out of and in the course of his employment.

A case quite like the instant case is *Jenkinson* v. *Harrison, Ainslie & Co., Ltd., supra.* The employee was an attendant at the power house but it was not a part of his duty to dust the switch board and he had been instructed not to do so. He attempted to dust it and received injuries from the electric current. It was held that the accident did not arise out of his employment.

Some difficulty may be encountered in distinguishing a few of the border line English cases from the great mass of holdings in that country; but an examination of the English authorities is convincing that it is there well established, and was well established when the legislature of this State wrote the language of the English act into our statute, that where the employee violates instructions as to the *manner* in which he is to perform his labor he is not thereby removed from the sphere of his employment, and that if he is injured the accident arises out of and in the course of his employment, that where the employee violates instructions as to the *place* in which

he is ·to perform his labor he thereby removes himself from the sphere of his employment and if there injured such accident does not arise out of and in the course of his employment. We are not dealing with or considering in either instance the question of wilful misconduct.

In *Haas* v. *Light & Power Co.*, 109 Kan. 197 (198 Pac. 174), the workman was employed as an oiler. His employment did not take him to a room in which there was dangerous electrical machinery. This machinery did not require oiling. He went into this room and received a shock causing serious injuries. It was held that the accident did not arise out of and in the course of his employment.

In *Fournier's Case*, 120 Me. 236 (113 Atl. 270), it was said by the court, speaking through Mr. Justice Wilson:

"If, then, the employee is in a place where he is prohibited from being by positive orders of his employer by reason of the danger, or has taken a certain course in going from one place to another which he is prohibited from taking by his employer for the same reason, notwithstanding it is within the period of his employment, and his purpose in going to the other place is to perform some of his duties he is engaged to perform, he cannot be said, while in the forbidden place or while going by the forbidden route or means, to be acting in the course of his employment within the meaning of the compensation act, because he is not in a place where he reasonably may be in the performance of any of his duties."

In 1 Honnold on Workmen's Compensation, § 113, it is said:

"Disobedience to an order or breach of a rule is not of itself sufficient to disentitle a workman to compensation, so long as he does not go outside the sphere of his employment. There are prohibitions which limit the sphere of his employment, and prohibitions which deal only with conduct within such sphere. A trans-

gression of a prohibition of the latter class leaves the sphere of employment where it was, and consequently will not prevent recovery of compensation. A transgression of the former class carries with it the result that the man has gone outside the sphere."

See, also, *Reimers* v. *Publishing Co.*, 85 N. J. Law, 441 (89 Atl. 931) ; *Henry* v. *Industrial Commission*, 293 Ill. 491 (127 N. E. 714) ; *Borin's Case*, 227 Mass. 452 (116 N. E. 817, L. R. A. 1918A, 217) ; *Jenczewski* v. *Aluminum Co.*, 199 App. Div. 156 (191 N. Y. Supp. 392).

We are persuaded that we should follow the doctrine of the English cases: (1) They adopt a construction of language used in a statute, which language after such construction was written into our statute. (2) Because we conceive it to adopt a correct rule. The employer has the undoubted right to limit the sphere of employment of the workman. He has the right to prohibit him from working in places which are dangerous to life and limb. This is in the interest of the employee primarily. The sphere of employment having been fixed by the employer he should not be required to respond in compensation where the accident occurs outside that sphere.

The rule, like most rules, is subject to exceptions, as where the employee in an emergency leaves the sphere of his employment to prevent loss or damage to his employer's property (see *Sebo* v. *Libby, McNeil & Libby*, 216 Mich. 351), or where the employee in an emergency leaves the sphere of his employment to rescue a fellow workman in imminent danger (see cases cited in *Sichterman* v. *Kent Storage Co.*, 217 Mich. 364), or where the orders have been flagrantly violated to the knowledge of the employer (*Rayner* v. *Sligh Furniture Co.*, 180 Mich. 168 [L. R. A. 1916A, 22, Ann. Cas. 1916A, 386]), or where the instructions are not established (*Kent* v. *Boyne City Chemical Co.*, 195 Mich. 671). Other exceptions may become ap-

parent as the cases arise.    This case falls squarely within the rule.    Deceased was not at work in a place where he had been directed to work but was in a place where he had been forbidden to work.    There is no ground for saying that the order not to work in the prohibited place had been flagrantly violated to the knowledge of the foreman because deceased had not reported to the foreman as requested Thursday morning.    The violation of instructions to report on Thursday would not justify the violation of an instruction as to the *place* of employment.

The cases of *Bischoff* v. *American Car & Foundry Co.*, 190 Mich. 229, and *Moyer* v. *Packard Motor Car Co.*, 205 Mich. 503, tend to sustain the conclusion we have reached.    In the *Bischoff Case* the employee was a molder; he was in charge of the floor; he left his place of employment and went upon a ladder to an electric crane to point out the source of difficulty in its operation.    He there received his injuries.    It was held that the accident did not arise out of and in the course of his employment.    In the *Moyer Case* the body of deceased was found in the elevator shaft.    He had been forbidden the use of the elevator.    Liability of the employer was denied by this court.    See, also, *Carnahan* v. *Mailometer Co.*, 201 Mich. 153.

The accident in this case did not arise out of and in the course of decedent's employment.    The award must be vacated.

WIEST, McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.