UTAH COPPER CO v. INDUSTRIAL COMMISSION et al.

No. 3989.   Decided July 26, 1923.   (217 Pac. 1105.)

1. MASTER AND SERVANT—COMMON-LAW MEANING APPLIED TO TERM "IN COURSE OF EMPLOYMENT" USED IN COMPENSATION ACT. There being no statutory definition of the term "in the course of his employment," it is reasonable to suppose the Legislature in providing for compensation intended the common-law meaning.

2. MASTER AND SERVANT—DEATH OF BRAKEMAN EXCHANGING POSITIONS WITH FIREMAN HELD NOT COMPENSABLE AS CAUSED BY IN-

JURY "IN COURSE OF EMPLOYMENT." Where a brakeman and fireman exchanged positions to equalize the hardships of stormy weather, the engineer consenting, death of the brakeman, in a collision, while acting as fireman, was not compensable as caused by injury "in the course of employment" within Industrial Act as understood at common law; the storm not constituting an emergency justifying the exchange.[1]

Proceedings under the Industrial Act by Mrs. Eva Scriven for compensation for the death of her husband, Owen A. Scriven, employee, as widow of deceased, opposed by the Utah Copper Company, employer and self-insurer. Compensation was allowed, and the employer applies for review.

AWARD ANNULLED.

*R. G. Lucas,* of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

THURMAN, J.

The Utah Copper Company, employer and self-insurer under the Utah Industrial Act (Comp. Laws 1917, §§ 3061-3165), brought this action to review, vacate, and set aside an order of the defendant Commission awarding compensation to Mrs. Eva Scriven as widow and dependent of Owen A. Scriven, deceased. Mr. Scriven was killed in an accident on plaintiff's railroad in Bingham Canyon, Utah, March 14, 1923. It is claimed by Mrs. Scriven, the applicant, that her husband was an employee of the plaintiff and was killed in an accident arising out of or in the course of his employment.

---

[1] *Spring Canyon Coal Co.* v. *Ind. Comm.,* 58 Utah, 618, 201 Pac. 177; *Rockefeller* v. *Ind. Comm.,* 58 Utah, 124, 197 Pac. 1038; *Cudahy Packing Co.* v. *Ind. Comm.,* 60 Utah, 161, 207 Pac. 148; *State Road Comm.* v. *Ind. Comm.,* 56 Utah, 252, 196 Pac. 853; *Chandler* v. *Ind. Comm.,* 55 Utah, 213, 184 Pac. 930; *Twin Peaks Canning Co.* v. *Ind. Comm.,* 57 Utah, 589, 196 Pac. 853, 20 A. L. R. 872.

The Commission found the following facts and conclusions:

"That in the month of January, 1923, Owen A. Scriven was employed by the Utah Copper Company as a fireman on the steam shovel on the mine levels and later on a dinkey engine pulling and pushing the loaded and empty cars up and down the mine hill. He continued working for the said copper company in that capacity until February 5, 1923, when he quit his job and left defendant's employ. He was re-employed on March 1, 1923, and worked in what is known as the 'bull gang' until March 4, 1923, when he again left and quit the employment of defendant. On March 11, 1923, he was again employed or hired by defendant as a member of the 'bull gang.' On March 12, 1923, Mr. Kennedy, the general foreman of the mine, knowing the deceased could fire a locomotive, told the deceased to go firing on the locomotives on the hill. The defendant replied that he would do so, but preferred job as brakeman or switchman and would like to get to braking as soon as an opening occurred. On March 12 and 13, 1923, the deceased worked as fireman, on engine No. 24. On the evening of March 13, 1923, as deceased was coming off from work, he met Mr. Kennedy, the general foreman, and Mr. Kennedy told him there was an opening as a brakeman on No. 75, and the next morning, March 14th, the deceased should go to braking on No. 75. Accordingly, on March 14, 1923, deceased went to work as brakeman on train No. 75. J. E. Barlow was the engineer and James Jackson was the fireman on that train and that day. Jackson was an experienced locomotive fireman, and also had had experience as a brakeman; that on this particular day the weather was very bad, windy and stormy. After a trip up and down the hill, and when No. 75 was in what is known as the auxiliary yard towards the bottom of the hill and coupled to a train of empty cars to go back up the hill, the brakeman, the deceased, got up on the engine and asked Fireman Jackson to let him (the deceased) fire, saying: 'You fire one trip and brake the next, and I will fire one trip and brake the next, and in that way we will have an equal share of the weather.' Accordingly, Jackson, the fireman, and deceased, the brakeman, exchanged places. Mr. Barlow, the engineer, knew of their doing so, made no objection, and told them that 'it would be all right with him.' The train went up the hill and in dropping back on a switch-back, there was a headon collision between train No. 75 and No. 400, and in that collision Mr. Barlow, the engineer who was on the engine, was killed, and the deceased, who was acting as fireman in place of Jackson, met with injuries from which he died the same day.

"The Utah Copper Company have never posted any rules whereby they prohibited men exchanging places as in this instance.

When Mr. Scriven was engaged, he was not instructed to not exchange jobs with the fireman.

"That on March 14, 1923, the decedent left surviving him Mrs. Eva Scriven, his lawful wife, who was living with him and wholly dependent upon him for her maintenance and support.

"That on the date of the said accident to the decedent, the deceased was paid a wage of $4.45 a day, working seven days a week, and the Utah Copper Company had in their employ three or more workmen and were known and designated as self-insurers, paying compensation direct to their injured employees or their dependents. That the Utah Copper Company paid the sum of $150 for the burial of the decedent.

"Conclusions.

"In view of the foregoing findings, the Commission concludes: That on the 14th day of March, 1923, Owen A. Scriven was fatally injured by reason of an accident arising out of or in the course of his employment, while in the employ of the Utah Copper Company, at Bingham, Utah, an employer subject to the State Industrial Act. It is reasonable to conclude that in view of the fact that both the decedent and Mr. Jackson were experienced both as fireman and brakeman, and taking into consideration the very severe and inclement weather on the day of the injury, that it would be to the best interest of the employer to have them alternate as brakeman and fireman in order to conserve their strength and energy; therefore the Utah Copper Company should pay to Mrs. Eva Scriven, the widow of the deceased, compensation in the sum of $16 per week for a period of 312 weeks, beginning March 15, 1923; all accrued payments to date to be made in a lump sum, and thereafter once in every four weeks."

Compensation was awarded in accordance with the findings.

It is contended by plaintiff that the Commission acted without and in excess of its jurisdiction in making the award for the reason that the evidence is insufficient to sustain the finding or conclusion that the accident which occasioned the death of deceased arose out of or in the course of his employment by the plaintiff.

An application for a rehearing was denied.

The gist of plaintiff's contention is that deceased was employed as a brakeman and without authority of his employer exchanged places with the fireman and came to his death while acting in that capacity; that therefore his death did not result from an accident arising out of or in the course of his employment.

There is no conflict whatever in the evidence.  The facts are
testified to by Mr. Kennedy, foreman of the plaintiff com-
pany, and Mr. Jackson, the fireman who exchanged places
with the deceased.  The engineer was killed in the same
accident.   As we have quoted the findings at length, it
will not be necessary to state the evidence except in a few
particulars wherein the findings are defective.   Mr. Ken-
nedy, the foreman, testified he had been foreman for the
plaintiff since 1912; that he had had railroad experience and
had run an engine on the hill for the plaintiff company;
that he never knew of any occasion when the brakeman
would relieve the fireman; that if a brakeman had offered
to exchange places with the fireman, he thought he would
have objected; that it is customary for an engineer to tell
the fireman what to do in regard to firing; that during the
time he had worked there as general foreman, there had
been no practice or custom for firemen to change places with
the brakemen without consulting the foreman and obtaining
his permission; that the day of the accident was very
stormy; that the deceased had fired an engine for the com-
pany, but witness knows nothing concerning his experience;
that he was put on as a brakeman at his own request.   Wit-
ness said he would consider it a violation of the rules for the
fireman and brakeman to exchange places, notwithstanding
it was a stormy day.   Witness knew of no instructions to
Mr. Scriven not to exchange jobs with the fireman.

Mr. Jackson testified that deceased was a brakeman for
the plaintiff company, but was firing the engine when the
accident occurred; that Mr. Barlow was engineer and knew
that witness and deceased intended to change positions, and
that he interposed no objections; that he said ''it was all
right with him, that it was just up to us''; that neither wit-
ness nor deceased got permission from the foreman.   Wit-
ness said the fireman was not bound by the engineer, except
that if the fireman could not fire the engine, the engineer had
the right to ask for his removal, but would have to wait till
the dispatcher could get a fireman.

It was admitted that deceased had had experience as a fire-
man.   The record does not disclose that the accident which

resulted in the death of the deceased was in, any manner attributable to the fact that the fireman and brakeman changed positions on the train. It is probably true that if deceased had not changed places with Jackson he would not have been killed, for Jackson, it appears, escaped uninjured. It is not at all clear, however, that these are questions that should be considered in trying to arrive at a correct conclusion concerning the question to be determined. On the one hand, it does seem extremely technical to hold that the mere fact that two capable employees of a company, equally skilled in the employment of each other, should, by temporarily exchanging places for their own personal comfort, thereby jeopardize their rights or the rights of their dependents to the benefits provided in the Industrial Act. On the other hand, it cannot be successfully denied that an employer has an absolute right to assign to each employee the particular work he desires him to perform, and any attempt to deny the employer that right would, under ordinary circumstances, be an unwarranted interference with the right of private contract. Nor is it at all clear to the mind of the court that an employee is justified in changing positions with another employee, without the consent of his employer upon the mere pretext that the employer may be benefited thereby. This, it seems to us, is a matter for the employer to determine. No doubt there are emergency cases, and perhaps many of them, in which it has been held that an employee may temporarily depart from the employment to which he was assigned and engage in another for the same master without forfeiting any of his rights as an employee; but such departure, without the master's knowledge or consent, it seems to the court, should have something more for its justification than the mere personal comfort and convenience of the employee.

Both parties litigant have been industrious in collating authorities bearing upon the question and bringing them to the attention of the court. The cases referred to by plaintiff are altogether too numerous to cite in this opinion. Such as are apparently in point and especially relied on by the parties will be referred to hereinafter.

Plaintiff tersely states the question to be determined in the following language:

"In the last analysis, therefore, the inquiry in this case is limited to the question whether or not the accident which occasioned the death of deceased was one which occurred in the course of his employment with the Utah Copper Company as brakeman."

In this connection, plaintiff quotes the following excerpt from *In re McNicol*, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, wherein the court says:

"It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform."

The point is made that that definition of an injury "in the course of employment" is approved by this court in *Cudahy Packing Co.* v. *Ind. Comm.*, 60 Utah, 161, 207 Pac. 148. It is also contended that the relation of employer and employee under the Industrial Act is the same as at common law, citing 1 Schneider, W. C. L. p. 98, and *Rockefeller* v. *Industrial Com.*, 58 Utah, 124, 197 Pac. 1038. By parity of reasoning plaintiff insists that the rule for determining whether or not an employee is acting in the course of his employment is the same as at common law. Counsel for plaintiff, in this connection, quotes from 3 Bailey, Personal Injuries (2d Ed.) p. 1986, the following:

"While acting without authority of his employer and beyond the scope of his employment, the servant is a stranger and a mere volunteer, and hence where an injury is caused to an employee by the negligence of another employee, while acting as a mere volunteer and outside the scope of his employment, the master is not liable."

Again, on the same page, the author says:

"The scope of the employment is defined by what the servant was employed to perform and what with the approval and knowledge of the employer he actually did perform, rather than by the mere verbal designation of his position."

There being no statutory definition of the term "in the course of his employment," it is reasonable to suppose the Legislature intended the ordinary meaning as understood at common law. This interpretation of the term was adopted in *Dietzen* v. *Ind. Board*, 279 Ill. at page

16, 116 N. E. at page 686, Ann. Cas. 1918B, 764, wherein the court says:

"An accident only arises out of and in the course of a workman's employment when it arises from his doing or omitting to do some act within the sphere of his employment. If he chooses to step outside the sphere of his employment and to do something he is not expected or required to do, he does so at his own risk and is not under the protection of the act."

In 1 Honnold on Workmen's Compensation, § 114, it is said:

"An accident does not arise out of the employment if, at the time, the workman is arrogating to himself duties which he was neither engaged nor entitled to perform."

In modification of the rigor of this rule, however, it is said by the author, on the same page:

"But the courts are inclined not to be too severe upon the workmen who are injured by attempts to further the master's business, although the attempt is in a line somewhat outside the precise scope of the employment"—citing Glass on Workmen's Compensation Law, 48.

In 1 Bradbury on Workmen's Compensation (2d Ed.) p. 459, the rule is thus stated:

"Where a servant is employed to do a certain service and is injured in the performance of a different service voluntarily undertaken, the master is not held liable."

Counsel for plaintiff quote from *Spring Canyon Coal Co. v. Ind. Comm.*, 58 Utah, 618, 201 Pac. 177, to the same effect:

"It is not enough for the applicant to say, 'the accident would not have happened if I had not been engaged in that employment, and if I had not been in that particular place.' He must go further and must say, 'the accident arose because of something I was doing in the course of my employment, or because I was exposed by the nature of my employment to some peculiar danger.'"

Plaintiff also quotes from Harper's Workmen's Compensation (2d Ed.) p. 87. The work is not available to the court, but quoting the language, as it appears in counsel's brief, the author says:

"The workman will not be permitted to do work outside the line of his duty as such employee, and add to his employer's responsibility for compensation for accidents. This is true, even where the employee in good faith undertakes such outside work in furtherance of the interests of his employer."

In *Northwestern Pacific R. R. Co.* v. *Industrial Commission,* 174 Cal. 297, 163 Pac.. 1000, L. R. A. 1918A, 286, the court said:

> "When a servant of his own accord and without the direction of his master steps outside the scope of his employment, whether on the master's business or his own, the master owes him no duty as to the dangers he encounters and is not liable for any injury received."

To the same effect, generally, see the following cases selected from those cited by plaintiff: *Gacesa* v. *Consumers' Power Co.,* 220 Mich. 338, 190 N. W. 279; *Colucci* v. *Edison Portland Cement Co.,* 94 N. J. Law, 542, 111 Atl. 4, 10 A. L. R. 1486; *Haas* v. *Kansas City L. & P. Co.,* 109 Kan. 197, 198 Pac. 174; *Mann* v. *Glastonbury Knitting Co.,* 90 Conn. 116, 96 Atl. 368, L. R. A. 1916D, 86; *Adams & Westlake Co.* v. *Ind. Comm.* (Ill.) 127 N. E. 168; *Gibbs* v. *Almstrom,* 145 Minn. 35, 176 N. W. 173, 11 A. L. R. 227.

Numerous other cases are cited by plaintiff from other jurisdictions of the country and also from England, all to the same effect.

The text-writers, as far as the writer has had opportunity to examine, seem to be in accord with the doctrine enunciated in the excerpts above quoted. There appears to be no doubt that the excerpts state the general rule almost universally adopted by the courts. It remains to be seen whether there are exceptions to the rule, and, if so, whether the instant case falls within the exceptions.

The Attorney General appearing for defendant, invokes the rule of liberal construction as applied to the term "employment," and quotes from *Rosmuth* v. *American Radiator Co.,* 201 App. Div. 207, 193 N. Y. Supp. 769, the following:

> "The recent current of authority in this state and elsewhere has been to take a broad conception of the term 'employment,' as used in the statute, not as confined merely to the nature of the work, or the particular service, * * * but as reaching out and embracing all the conditions, obligations, and incidents of the employment."

Counsel also cite in the same connection the following Utah cases: *State Road Comm.* v. *Ind. Comm.,* 56 Utah, 252, 190

Pac. 544; *Chandler* v. *Ind. Comm.*, 55 Utah, 213, 184 Pac. 1020, 8 A. L. R. 930; and *Twin Peaks Canning Co.* v. *Ind. Comm.*, 57 Utah, 589, 196 Pac. 853, 20 A. L. R. 872.

It is difficult to see the applicability of the Utah cases to the question presented here. Counsel emphasize the last seven words quoted from the New York case and for convenient reference we have done the same. Their application of the doctrine to the instant case appears to be that inasmuch as the engineer, fireman, and brakeman were all engaged in operating the train, therefore it was a sort of common employment, interchangeable among themselves by mutual agreement, and all right as long as the engineer did not object. The difficulty with that contention is that the record shows there was no custom among the employees, authorizing one employee to exchange places with another; nor was there any rule or custom clothing the engineer with authority to represent the company in respect to the conduct of the fireman and brakeman in exchanging their positions. Besides this, the engineer simply said, as stated by Jackson, "It was all right with him; it was just up to us." Whether Jackson meant to convey the idea that the engineer considered it a matter exclusively between the fireman and brakeman and concerned nobody else, or whether he meant that the fireman and brakeman must assume the risk of consequences if the matter should thereafter be brought in question by the employer, is a matter of conjecture. In any event, we are unable to see any advantage to defendant in the fact that the engineer did not object to the exchange. Nor is there anything in the record to suggest that it was incumbent upon the company to advise its employees not to exchange positions. It was equally immaterial, as the matter appears to us, that the brakeman was also an experienced fireman. If these considerations find any support in the authorities relied on by defendant, we have failed to discover it in our investigation. A brief examination of a few of the cases relied on by defendant will demonstrate the correctness of our conclusions:

In *Union Colliery Co.* v. *Ind. Comm.*, 298 Ill. 561, 132 N. E. 200, 23 A. L. R. 1150, the deceased was employed as "top

cager" in a coal mine. His work was at the top of a tipple built of concrete, 40 feet in height, above the top of the shaft. In going to his work it was customary to ascend by a flight of stairs on the east side of the shaft, but he had often ascended on the cage. On the night of the injury he was at the top of the shaft and a carload of coal was to be conveyed on the cage to the top of the tipple and dumped. The deceased, instead of ascending by the stairway, got on the cage to ride to the top so as to be there in time to dump the car. While so riding on the cage, an accident occurred resulting in his death. The rules of the company forbade employees from riding on the cage. The contention was made by the company that he was not killed in the course of his employment. The court refused to sustain the contention and held that the accident arose in the course of his employment: First, for the reason that there was no evidence that the company had ever forbade the deceased riding on the cage; and, second, because it was simply a change in the method of performing the service. See 1 Honnold, § 114; Glass, W. C. L. 52. If the servant acting within the sphere of his employment violates the order of his master, the latter is responsible. *Gracesea* v. *Consumers' Power Co.*, supra. It was the duty of the servant to go to the top of the tipple where his services were required. Notwithstanding he did not go there in the customary way and even adopted a method which may have been forbidden, he was nevertheless within the sphere of his employment.

In *Chicago, Wilmington & Franklin Coal Co. v. Ind. Comm.*, 303 Ill. 540, 135 N. E. 784, it was the duty of the deceased working in a coal mine, to open the door for drivers and give them signals when it was safe to pass. During the noon hour on the day of the accident, one of the drivers asked the deceased to drive the mule of another driver and go into the mine and bring out some cars of coal. While bringing out the second car, the deceased lost control of it, causing an accident which resulted in his death. The court held the accident arose in the course of his employment. The evidence, however, disclosed the fact that there was a custom in the mine to recruit the drivers from among the "trappers,"

to which class the deceased belonged. The deceased was one of the old trappers and had made trips for other drivers prior to the time he was injured. This was clearly sufficient to bring the case within the exception to the general rule.

In *A. L. Randall Co.* v. *Ind. Comm.*, 305 Ill. 558, 137 N. E. 435, the foreman in a factory requested an employee to take some bags to an upper floor by using the freight elevators. Arriving at the shaft, he found the elevator was in the basement and was told by the foreman to wait a minute while he got the elevator man. Instead of waiting as directed, the employee reached into the shaft, started the elevator upward, and was accidentally killed. In holding the company liable the court said:

"In doing what he did, deceased was endeavoring to perform the duty he was ordered to perform by his foreman, although the foreman had not directed him to operate the elevator."

No comment is necessary to distinguish that case from the one at bar.

In *Martucci et al.* v. *Hills Bros. Co. et al.*, 171 App. Div. 370, 156 N. Y. Supp. 833, the injured employee was a syrup boiler in the defendants' fruit canning factory and left his work of boiling syrup to help another employee start a freight elevator which had became unmovable on account of the cable becoming displaced. While so engaged, an accident occurred in which he was fatally injured. The court held the accident arose in the course of his employment, and at page 372 of 171 App. Div., at page 834 of 156 N. Y. Supp., of the report said:

"It is doubtless true that the facts would not support a judgment under the common law, nor under the Employers' Liability Act (Consol. Laws, c. 31, §§ 200-204); but the Workmen's Compensation Act contemplates charging the industrial life of the state with the burden of accidents incident to such industry, within the limits fixed by the act, and we are not prepared to hold that a common laborer is not in 'the course of his employment' when he steps aside from his immediate employment to give an incidental aid to a fellow employee in the operation of a freight elevator, which is operated in common by all of the employees. It does not appear that the elevator had been broken or damaged; merely that it had ceased to respond to the operating cables, and to say that a man who is at work near the point may not lend

a hand in starting this elevator without sacrificing his rights under the law, is too narrow a construction to apply in the construction of the statute."

This appears to have been not merely a typical emergency case, but also one in which it appears to have been recognized as a common duty of the employees to operate the elevator. The case certainly lends no support to the contention of defendant.

In *Malandrino* v. *Southern New York Power & R. R. Co.*, 190 App. Div. 780, 180 N. Y. Supp. 735, it was the duty of an employee to shovel gravel into a wagon. While he was building a bonfire to warm himself and fellow workmen during the interval between the loading of wagons, a spark flew into his eye causing an injury. The weather was extremely cold. The court held the injury arose in the course of his employment. This case, clearly, comes within the principle of *State Road Comm.* v. *Ind. Comm.*, 56 Utah, 252, 190 Pac. 544, in which this court held that an employee working on a public road who left his work seeking for shelter during a storm and while doing so was struck by lightning and killed was at the time "in the course of his employment."

If, in the instant case, the deceased while his train was standing had momentarily stepped aside to warm his fingers, and while doing so had been accidentally killed, much could be found among the authorities to warrant a holding that his death occurred in the course of his employment.

Courts have gone a long ways in justifying slight departures from the immediate employment of the employee, even though it was merely for his own personal comfort or convenience—such for instance as answering a call of nature, taking time for lunch, and even stepping across the street to buy a mug of beer. The last case was an English case and may have been justified on the grounds of emergency. However, we know of no case which goes to the length contended for by defendant in the case at bar. It is quite true the evidence shows there was a serious storm, but it does not show that the storm was so severe as to render it impracticable to perform the work of a brakeman, even for an indefinite length of time. The record is very meager in describing the

condition of the weather. It is so meager, in fact, that to hold in this case that an emergency existed justify- **2** ing the brakeman and fireman exchanging positions without the consent of their employer would be to establish a precedent for the future justifying such exchanges for trivial and insignificant causes. We are unable to find that any emergency existed in the present case justifying the brakeman and fireman in exchanging positions. Nor does the case come within any other one of the exceptions to which we have referred.

For the reasons stated, the order of the Commission awarding compensation is hereby annulled, vacated, and set aside.

WEBER, C. J., and GIDEON and CHERRY, JJ., concur.

FRICK, J., did not participate herein.