## WILBUR C. BYAM v. INTER-STATE IRON COMPANY.[1]

November 10, 1933.

No. 29,646.

*Mitchell, Gillette, Nye & Harries* and *W. O. Bissonett,* for relator.
*Homer Gannaway,* for respondent.

*HOLT, Justice.*

Certiorari to review a decision of the industrial commission awarding respondent compensation for an accidental injury.

The facts involved are not in dispute. Respondent since 1910 has been in the employ of relator as chauffeur. As such it was his duty to drive relator's automobile both in its business, and also for the personal use of Mark Elliott, one of its officers, and for his wife. On July 11, 1932, respondent was directed by Mr. Elliott to go to relator's mine and get a Hudson car, do some driving for his

[1]Reported in 250 N. W. 812.

wife in Virginia, and then drive to Duluth for some furniture to be transported to a cottage at Esquagamah Lake. With the permission of Mrs. Elliott, he took Mr. Krause, a former chauffeur of relator, to Duluth to help in handling the furniture, returned to Esquagamah Lake, placed the furniture in the cottage, and directed Krause to drive the car around to the front of the premises while he, respondent, fastened the doors to the cottage. That done, respondent stepped to the front, where the car was waiting, and took a seat beside Krause, who started the car. The purpose was to return the car to the place it was taken from in the morning. The road led up a slope to a bridge. The car was facing the sun, and the driver was blinded thereby. The car struck the bridge railing, and in the sudden stop respondent's leg was fractured. For the injury thus received compensation was awarded.

Relator assigns as error the finding that respondent's injury was caused by an accident arising out of the employment. It concedes that the accident occurred in the course thereof. Relator contends that respondent's employment was that of chauffeur; that on this particular trip it was his duty to drive the car; that he was not driving when his leg was fractured; hence the accident did not arise out of his employment as driver or chauffeur. Decisions are cited in support of the contention from three states whose compensation acts are worded like ours except that of Utah (1 Mason Minn. St. 1927, § 4261). Northwestern Pac. Ry. Co. v. Industrial Comm. 174 Cal. 297, 163 P. 1000, L. R. A. 1918A, 286; Morris & Co. v. Industrial Comm. 295 Ill. 49, 128 N. E. 727; Utah Copper Co. v. Industrial Comm. 62 Utah, 33, 217 P. 1105, 33 A. L. R. 1327.

In the California case, 174 Cal. 297, 163 P. 1000, L. R. A. 1918A, 286, Bowdish was chief clerk of the freight department of the employer railroad company. He was directed to go on the company's train to another town on its line to do some work. On the way the train ran over a man. There was delay to care for the one injured. While so waiting Bowdish and other passengers alighted. When the train again started Bowdish attempted to board it while moving. He fell and was killed. It was held that Bowdish stepped

outside his employment when he left the train, and his dependents could not have compensation.

In the Illinois case, 295 Ill. 49, 128 N. E. 727, Byers, a truck driver, was required to go early each morning to a garage in the city of Chicago, get his truck, drive to a branch office of his employer for a load of meats, distribute the load to customers, collect therefor, return to the branch office about 2:30 p. m., account for the proceeds, unload if all the meat had not been delivered, and return the truck to the garage. On the day in question he returned to the branch office about the usual time, accounted for the morning's load, and then asked the shipping clerk in the office to drive the truck to the garage for him. (There was some dispute as to his being drunk, but the court accepted the finding that he was not.) The shipping clerk undertook to drive the truck to the garage, with Byers seated at his side. On the way Byers fell off the seat and was killed. The court held that the accident did not arise out of employment of truck driving, since Byers was not engaged therein when he fell. The decision follows the earlier one of Dietzen Co. v. Industrial Comm. 279 Ill. 11, 116 N. E. 684, Ann. Cas. 1918B, 764. There the injured employe was set to work at a buffing machine, the articles to be buffed being small metal handles. Below the buffer was a receptacle on a tripod into which fell the material removed in the process, the receptacle being connected by pipes with a machine containing a fan which carried away the debris. A cover protected from contact with the part containing the fan. The employe dropped a handle, which fell into the receptacle and was carried down in proximity to the fan. To recover the handle the employe removed the cover and, reaching down for the handle, came in contact with the fan, injuring his hand. The court held that the accident did not arise out of the employment, that there was another employe in the factory whose duty it was to recover articles which might fall into the pipes, and that the injured employe was out of the sphere of his employment when the accident happened. Of course there are strong reasons for insisting that employes should be confined to the machine they are hired to operate in a complicated factory. To avoid accidental injury to the em-

ploye and fellow employes it is necessary that employes be selected because of ability and experience to operate the particular machine to which they may be assigned. Without attempting to criticize the decisions just referred to, we might suggest that had Byers, the truck driver, become suddenly ill or incapacitated for any reason to drive the truck from the branch office to the garage and therefore had asked the shipping clerk, a competent driver, to return it to the garage, and the shipping clerk, in complying, had been injured on the road to the garage through no fault on his part, it would have been harsh indeed to deny him compensation on the ground that the accident did not arise out of his employment as shipping clerk.

The Utah case, 62 Utah, 33, 217 P. 1105, 33 A. L. R. 1327, appears to be an extremely strict construction of their compensation act, which originally corresponded with § 4261 of ours, in specifying that an injury to an employe is compensable when it is caused "by accident arising out of and in the course of his employment." In 1919 that law was amended to make it more liberal to the workman by changing the word "and" to "or," as stated in Utah Apex Min. Co. v. Industrial Comm. 67 Utah, 537, 550, 248 P. 490, 49 A. L. R. 415; yet in this accident, happening in 1923, almost four years after the amendment, the court in the above cited case of Utah Copper Co. v. Industrial Comm. 62 Utah, 33, 34, 217 P. 1105, 1107, 33 A. L. R. 1327, held that the employe, one Scriven, was not killed "in the course of his employment." The facts in short were these: Scriven had worked as fireman for the employer, a mining company operating a train up and down the mine hill, and asked to be put to braking. His request was granted. It was a stormy day, and Scriven suggested to the fireman that they change places each trip so that one would not have to be in the inclement weather all the time. The fireman agreed, and the engineer in charge said that was all right with him. Those persons were the only ones in charge of the train. There was a general foreman of the mine, but he seems to have had no direct supervision over the movements of the trains. This train in its operation collided with another train. Scriven and the engineer were killed on the trip when Scriven was firing and

the fireman was braking, the latter being an expert brakeman. No fault of either of the three men in charge of the train, where the engineer and Scriven were killed, caused or contributed to the collision. Still the court held that Scriven was not in the course of his employment, and his dependents were deprived of the benefit of the compensation act. In the case at bar counsel for relator concedes that respondent's leg was fractured in the course of the employment, so we take it that he considers the Utah decisions less liberal to the workman than they ought to be.

In the instant case respondent was, to be sure, employed as chauffeur, but the employment was not always confined to merely operating the car. On the day of the accident he was upon a mission for Mr. or Mrs. Elliott. He, with Krause, was to go for some furniture in Duluth, load it onto the car (or trailer), take it to Esquagamah Lake, place it in Elliott's cottage there, and return the car to the place where it was obtained in the forenoon. Had the leg been fractured while handling the furniture, no defense to compensation could have been urged. There is no claim that Krause was incompetent or careless as a driver. In fact he had been driving this particular car when in relator's employ as chauffeur. It was respondent's duty to see that this car was returned and that he himself got back so that he would be where he could receive orders from Mr. and Mrs. Elliott. Had Elliott instead of Krause been the driver when respondent was injured, there could have been no doubt of the latter's right to compensation although the accident did not arise in his employment as chauffeur.

This court in actions against the master for damages has held that his servant as driver of a vehicle has not abandoned his employment as such when he permits another to do the actual driving while the servant is in the vehicle and has control of the driving. Geiss v. Twin City Taxicab Co. 120 Minn. 368, 139 N. W. 611, 45 L.R.A.(N.S.) 382; Kayser v. Van Nest, 125 Minn. 277, 146 N. W. 1091, 51 L.R.A.(N.S.) 970. In the instant case relator does not contend that respondent disobeyed orders in permitting Krause to take the wheel on the way from the cottage to the mine. And it seems to us that the finding of the industrial commission that re-

spondent's injury was caused by an accident arising out of his employment is sustained. He concededly upon Elliott's order got this car, did driving for Mrs. Elliott in the forenoon, then in the afternoon at her direction drove to Duluth for the furniture, carried it into the cottage at Esquagamah Lake, and saw that the cottage was properly locked. It evidently was a trip that required assistance, and the commission could find that it was agreeable to Mrs. Elliott that Krause, relator's former chauffeur, should accompany and assist. It could hardly be expected that with this picture before it the commission should find that respondent departed from the sphere of his employment when, near the end of perhaps a hard day's driving, he let an experienced chauffeur take the wheel, respondent sitting beside the driver and being in charge of the car.

In Kopp v. Bituminous S. T. Co. 179 Minn. 158, 228 N. W. 559, the truck driver asked a 15-year old lad to drive the truck while he, the driver, stood on the running board, from which place he fell and was killed. He was not driving, but another was, at his instance. The finding was sustained that the accident arose out of and in the course of the employment. In Olson v. Robinson, Straus & Co. 168 Minn. 114, 210 N. W. 64, it was held that a young employe who undertook to operate an elevator, not within his duties, did not so depart from his employment as to lose the benefit of the compensation act. See also Hafer W. C. Co. v. Industrial Comm. 295 Ill. 578, 129 N. E. 521. Relator asserts that Dietzen Co. v. Industrial Comm. 279 Ill. 11, 116 N. E. 684, Ann. Cas. 1918B, 764, was approved in Rautio v. International Harv. Co. 180 Minn. 400, 231 N. W. 214, 216; but it was only to the proposition that [180 Minn. 406] "violations of orders or directions do not always defeat compensation. But when such violation takes the employe out of the sphere or scope of his employment it is fatal to his claim for compensation." Where an employe goes into a place expressly forbidden, he departs from his employment. Rautio v. International Harv. Co. 180 Minn. 400, 231 N. W. 214; Gacesa v. Consumers Power Co. 220 Mich. 338, 190 N. W. 279, 24 A. L. R. 675. But where respondent was in and in charge of the car he was directed to use when he was injured, we think the commission had a reason-

able basis for finding that the accident arose out of his employment. The writ is discharged and the award affirmed.