[Civ. No. 2691.   Second Appellate District, Division One.—December 20, 1918.]

MARYLAND CASUALTY COMPANY (a Corporation), et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

WORKMEN'S COMPENSATION ACT—DEATH OF EMPLOYEE—INJURY ARISING OUT OF EMPLOYMENT—ACCIDENT TO AUTOMOBILE ON WAY TO BUSINESS ENGAGEMENT.—In this proceeding before the Industrial Accident Commission for compensation for the death of an employee, who was killed by an electric car colliding with an automobile which he was driving on his way to a place to which he and another employee had been sent on business of the employer, the commission properly held the deceased at the time he was injured was engaged in an act arising out of his employment.

ID.—UNFAMILIARITY WITH AUTOMOBILE—CONTRIBUTORY NEGLIGENCE— RIGHT TO COMPENSATION NOT BARRED.—In such case, where it appeared that the men had the right to travel in an automobile of their own choosing, and that the employer had laid no injunction upon them as to who should operate the machine, the right to compensation was not barred by the fact that the accident resulting in the death of the injured employee was due to his unfamiliarity with the kind of machine he was driving, since his driving a machine with which he was unfamiliar was a mere act of negligence, and contributory negligence is no bar to an award of compensation being made.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission. Award affirmed.

The facts are stated in the opinion of the court.

H. W. Kidd for Petitioners.

Christopher M. Bradley for Respondents.

JAMES, J.—*Certiorari* to review proceedings and determination made by the Industrial Accident Commission under which there was an award of compensation to the widow of F. R. Showalter. Showalter was an employee of petitioner Union Hardware and Metal Company. He died as a result of injuries received by collision between an interurban electric car and an automobile which he was driving. There is no dispute as to Showalter having been in the employ of the company mentioned on the day when the injuries were received, or that he was at the time traveling from the city of Los Angeles to the city of San Pedro on business of his employer. Petitioners contend, however, that under the evidence no award should have been made, because of the willful misconduct of the deceased and because Showalter, at the time he suffered the injuries, was not performing an act in the course of or growing out of his employment. The testimony heard by the commission showed that Showalter and one MacKenzie were employed at the large mercantile establishment of the petitioner Union Hardware and Metal Company; that they were subject to the orders of the secretary; that the secretary desired them to go to the city of San Pedro and make the acquaintance of certain agents of a shipbuilding plant. This for the purpose of facilitating sales between the company and the shipbuilders. The secretary designated the day on which the men were to go, and the two employees started on the morning of the day mentioned to make the journey. MacKenzie owned a small automobile which he was in the habit of using on the business of the company, and for the use of which compensation was made to him—at least he was reimbursed for the fuel used. Showalter also owned an automobile of a different kind. The secretary of the corporation testified that after arranging for the trip of the two men, he heard talk between them to the effect that they would

take Showalter's machine. They did not do this, but started on the trip in the small machine owned by MacKenzie. No dispute is made but that, in so far as the choice of an automobile was concerned, it was immaterial to the company what machine was used, and that whatever selection was made in that regard the company approved of it. It appeared that Showalter was an experienced driver of an automobile. He was not, however, accustomed to the use of the kind of machine used for the particular trip which was undertaken on the day in question. After leaving the more congested portion of the city, MacKenzie, who had operated the machine up to that point, exchanged seats with Showalter and Showalter proceeded from then on to guide and control the machine. The men had proceeded to a point on South Main Street, where an interurban car line crossed that thoroughfare, and at that point the automobile was struck by a trolley car. MacKenzie testified at the hearing before the commission, and was asked to state the circumstances. We quote portions of his testimony: "We saw the car and we kind of slowed down and Mr. Showalter was not used to driving a Ford car and we never realized any danger when we first saw the car." MacKenzie further stated that the car was from one hundred and fifty to two hundred feet away when they saw it. The following further testimony was given by this witness:

"Q. Was it coming at a good rate of speed?

"A. Apparently it was, from the way it struck the machine.

"Q. What kind of a driver was Mr. Showalter?

"A. He was a very careful man.

"Q. In your opinion was he exercising due care and caution at this particular time?

"A. Absolutely.

"Q. Then what in your opinion was responsible for the accident?

"A. His lack of knowledge of the machine. That is the only thing that I can account for it. . . .

"Q. You were showing him how to operate a Ford car when this accident happened?

"A. Yes, sir. I showed him different points on it.

"Q. And isn't it further a fact that it was at his request that you let him drive the car?

"A. Yes, sir.

"Q. Didn't he say to you in substance that he wanted to learn how to drive a Ford car?

"A. Yes, he said he would like to learn.

"Q. And it was at that time that you let him take the wheel of the car?

"A. No, we talked machines quite a long time going down there. He was quite enthusiastic about mechanics and so forth and we were talking of different machines and he was asking me different points on the machine and so forth and he seemed to understand parts of it and other parts he did not understand and I tried to explain to him what he didn't understand. . . .

"Q. What, if any, change was there in the speed of your automobile from the time you first saw the car until the accident occurred?

"A. As I say, the car kind of slowed down at first.

"Q. The automobile?

"A. Yes.

"Q. Did you say anything to Mr. Showalter about slowing up?

"A. Yes, I called his attention to it. I said, 'There is a car, Rolly, I think we had better slow down a little bit.'

"Q. What, if anything, did he say to you in reply?

"A. He slowed the car down.

"Q. What do you think was the cause of the accident?

"A. I think the cause of the accident was simply his not being familiar with the machine. . . .

"Q. Didn't the car suddenly shoot ahead just before the accident happened—the automobile, I mean?

"A. It seems to me that it did; as far as I can remember, it did. . . .

"Q. And it was the first time he had ever driven a Ford car?

"A. Yes."

The motorman of the electric car which collided with the automobile testified that he saw MacKenzie immediately after the accident, and that MacKenzie came up to him and told him that he had told Showalter to "go ahead, he could make it."

MacKenzie testified that he had no recollection one way or the other about having made that statement.

In our opinion, this evidence fails to sustain the contention of petitioners that at the time Showalter suffered his injuries he was not engaged in an act arising out of his employment, or that he was guilty of willful misconduct. It was conceded that the men had the right to travel by an automobile of their own choosing, and the employer laid no injunction upon them as to who should operate the machine. No doubt, by the conduct of Showalter, the risk of injury was enhanced because of his lack of familiarity with the machine he was engaged in driving, but contributory negligence constituted no defense. The case is not unlike that shown in *Rideout Co.* v. *Pillsbury,* 173 Cal. 132, [159 Pac. 435]. There a deckhand working on a barge fell from the deck of the same and was drowned. It was shown that his duties consisted only of helping to unload the barge; that the loading had been done and the barge was on its way from San Francisco to Oakland, at which latter place it was to be unloaded. The deckhand had no duties to perform during the voyage. There was a house provided for the men to remain in while crossing the bay, and they were free to amuse themselves there if they chose. The deckhand did not remain in the house, but was observed by another employee outside on the deck, leaning against a post, apparently asleep. This employee took hold of the deckhand's clothing and aroused him, saying: "Frank, you crazy? Come on inside." The deckhand answered: "No. Leave me alone." He was left there and later his body was found floating in the waters of the bay. An award was made by the commission and affirmed by the supreme court. In that case it is plain that the employee was negligent in leaving the safe place provided by his employer for his accommodation and remaining upon deck and going to sleep in a place where he was likely to be thrown overboard. Assuredly he greatly added to the risks of his employment, but such act on his part constituted negligence only, which was no bar to a recovery under the statute. In *Elk Grove Union High School Dist.* v. *Industrial Acc. Com.,* 34 Cal. App. 589, [168 Pac. 392], it is said: "A person is not to be denied compensation under the compensation act merely because his injury has been superinduced by mismanaging the duties of his employment, unless such mismanagement amounts to willful misconduct." Had orders been given by the employer of Showalter forbidding him to operate any particular automo-

bile which might be used on the business of the company, then perhaps a violation of that injunction might amount to willful misconduct. (*United States Fidelity etc. Co.* v. *Industrial Acc. Com.,* 174 Cal. 616, at p. 621, [163 Pac. 1013].) As we have before stated, however, no such instructions were given to Showalter or MacKenzie; the men had freedom of choice as to the automobile to be used, and so also apparently as to the driver who might operate it. And so we conclude that the act of Showalter in driving the automobile at the time in question was, in view of his inexperience in the handling of that particular machine, a mere act of negligence which was the proximate cause of the injury, but which act in no way interposed as a bar to prevent an award of compensation being made.

The total award made by the commission to the widow, for herself and a minor child, was the sum of $5,004.98. Assuming that the reasonableness of an award is subject to review in this proceeding, we are not prepared to agree with petitioners that the award as made was for an unreasonable amount. Its amount was within the limit fixed by the statute. We think that there was substantial evidence to sustain the findings of the commission, and, this being true, it is the duty of the court to affirm the award. (*Southern Pac. Co.* v. *Industrial Acc. Com.,* 177 Cal. 378, [170 Pac. 822].)

The award is affirmed.

Conrey, P. J., and Myers, J., *pro tem.,* concurred.