(No. 13480.—Judgment affirmed.)

THE HAFER WASHED COAL COMPANY, Plaintiff in Error, vs. THE INDUSTRIAL COMMISSION et al.—(FRED DAMRON, Defendant in Error.)

*Opinion filed December 21, 1920—Rehearing denied Feb. 3, 1921.*

1. WORKMEN'S COMPENSATION—*when injury to miner arises out of and in course of employment.* An injury to a coal miner who was caught between low-hanging coal and the pit-car he was driving in the execution of an order to haul timbers, arises out of and in the course of his employment although he was not employed to drive the mules hauling the car.

2. SAME—*award for period of sixty-six and two-thirds weeks for one-third loss of use of arm is proper.* Under clause 17 of paragraph (*e*) of section 8 of the Compensation act an award for a period of sixty-six and two-thirds weeks is proper where the injuries sustained cause a permanent loss of one-third of the use of an arm.

3. SAME—*when error in allowing applicant to testify as to per cent of loss of use of arm will not justify reversal.* Error in allowing the applicant to testify that he believed the injuries sustained caused a loss of one-third of the use of his arm will not justify a reversal, where, aside from the incompetent statement, his other testimony and actual demonstration with the injured arm show that he has sustained loss of the use of his arm to that extent. (*International Coal Co.* v. *Industrial Com.* 293 Ill. 524, distinguished.)

WRIT OF ERROR to the Circuit Court of Williamson county; the Hon. D. T. HARTWELL, Judge, presiding.

DENISON & SPILLER, (R. H. DAVIS, of counsel,) for plaintiff in error.

GEORGE R. STONE, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes to this court on a writ of error allowed to review the judgment of the circuit court approving and confirming an award made Fred Damron under the Work-

men's Compensation act. Damron was an employee of
plaintiff in error, and on November 29, 1918, while driv-
ing a pit-car hauling timbers in plaintiff in error's mine, he
was caught between the car and low-hanging coal and his
left collar bone broken and shoulder bruised. It is admit-
ted the parties were under the Compensation act and that
Damron's wages as timberman and cager were $5 per day
and that of a trapper $4.75. A hearing was had before
an arbitrator March 19, 1919, and Damron was awarded
$13 per week for five and two-sevenths weeks, covering
the period of total incapacity, which was paid. He was
awarded the further sum of $13 per week for sixty-six
and two-thirds weeks under paragraph (*e*) of section 8 for
33⅓ per cent permanent loss of the use of the left arm.

Three points are relied upon by plaintiff in error for
a reversal of the award: (1) Because defendant in error,
Damron, was permitted, over objection, to testify that the
injury had caused the loss of one-third the use of his left
arm; (2) the award is not authorized by the statute under
which it was made; (3) the injury did not arise out of and
in the course of the employment.

Treating the questions in the reverse order they are
presented in the brief, we do not think the claim that the
injury did not arise out of and in the course of the em-
ployment is well founded. There is no conflict in the tes-
timony on this question. Damron's employment was that
of cager, and his duties also were to act as timberman when
so directed. On the day of the injury he, another employee
named Harris and a man named Arnold, who was driver
of a mule in hauling pit-cars, were directed by the assist-
ant mine manager to go to the "branch" and get some tim-
bers or props and take them 150 or 200 feet to the place
where it was desired to use them. They proceeded to the
place where the timbers were, loaded them on the car and
started to haul them to the place directed. The driver,
Arnold, was on the rear of the car and Damron on the

front.  Arnold asked Damron to drive the mule, which he proceeded to do and was caught by some low-hanging coal and his left collar bone broken.  To drive mules hauling cars was not among the duties Damron was employed to perform, and plaintiff in error insists that he had stepped outside his employment to do something he was not required or expected to do when injured, and therefore the injury did not arise out of the employment.  The assistant mine manager, it is true, did not direct Damron to drive the mule.  His orders to the men were to get the timbers and haul them to the place designated.  This required the timbers to be loaded on the car and then driven to the place desired.  The mere fact that Damron, being on the front end of the car, was requested to, and did, drive the mule, was not such a departure from the work he was directed to do at the time as would justify holding that the injury did not arise out of and in the course of his employment.  He was assisting in the execution of the order of the assistant mine manager to load the timbers on the car and move them to the place needed, and his injury occurred while obeying that order.  That it may have been more convenient in expediting the order for Damron to drive the mule the 150 or 200 feet the timbers were to be moved, and for that reason he did so, would not justify holding that he was on that account not entitled to compensation.  It was not such a departure from the line of Damron's employment as was held in *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11, and subsequent cases, would place him outside the protection of the act when injured.  *Hartz* v. *Hartford Faience Co.* 90 Conn. 539.  See, also, *Sunnyside Coal Co.* v. *Industrial Com.* 291 Ill. 523, and cases cited.

The award of $13 per week for a period of sixty-six and two-thirds weeks was made under paragraph (*e*) of section 8 of the Workmen's Compensation act, "for the reason that the injuries sustained caused 33⅓ per cent per-

manent loss of the use of the left arm." We think, if the
facts justified it, the award was authorized under clause 17
of paragraph (*e*) of section 8.

It is also insisted that the finding of the proportion of
loss of use of the arm is based on incompetent evidence.
Damron testified before the arbitrator, over the objection
of plaintiff in error, that the loss of the use of his arm he
believed to be one-third, and it is insisted that under *Peabody Coal Co.* v. *Industrial Com.* 289 Ill. 449, and *International Coal Co.* v. *Industrial Com.* 293 id. 524, the award
should be reversed. We do not think the error complained
of would justify reversal. In the last case cited it was said:
"It is competent to prove conditions, such as the comparative ability of the applicant to do certain things in the use
of the injured member before and after the accident, as
well as any other fact which would enable the commission
to draw an inference as to the ultimate fact to be determined." Damron was examined and testified fully before
the arbitrator as to the effect of the injury on the use of
his arm, was asked to and did illustrate during direct and
cross-examination how the use of his arm was interfered
with, by various movements he could or could not make.
He also exhibited to the arbitrator, and again to the Industrial Commission at the hearing on review, his injury,
which was inspected and examined by the arbitrator and
commission. Independently of his testimony that he believed the loss of use of his arm was one-third, his testimony tended to show that he had sustained loss of the use
of the arm to that extent, and the fact that the injury was
exhibited to and examined by the triers of facts is also
entitled to some weight.

We would not be authorized to reverse the judgment
for the errors complained of, and it is affirmed.

*Judgment affirmed.*