LEACH, Respondent, v. J. I. CASE THRESHING MACHINE CO., Appellant.

(219 N. W. 884.)

(File No. 6129.   Opinion filed June 16, 1928.)

*Case & Case*, of Watertown, for Appellant.
*Campbell & Fletcher,* of Aberdeen, for Respondent.

BURCH, P. J. This is an appeal from the circuit court of Edmunds county, affirming an award of the board of arbitration and industrial commissioner in a proceeding for compensation under the provisions of sections 9436 to 9491, inclusive, R. C. 1919, and acts amendatory thereof, known as the Workmen's Compensation Law. John H. Leach was killed in an automobile accident in Edmunds county on the 3d day of December, 1924. At that time he was in the employ of the J. I. Case Threshing Machine Company as a traveling salesman, and had been so employed for

many years. His mother filed a claim against the company for compensation under the Workmen's Compensation Law.

Compensation was allowed, and the company appeals.

██ ██ The matter was heard first before a board of arbitration, then on review before the industrial commissioner, and on appeal before the said circuit court. Some of the procedure in the circuit court was not applicable to such appeals, as outlined in Wieber v. England, 52 S. D. 72, 216 N. W. 850. The court's rulings on the admission and rejection of evidence cannot be considered, nor can its refusal to make requested findings be considered, since findings by the court are not required, nor does the court receive evidence. Its functions are confined to a review of the record brought before it from the board of arbitration and industrial commissioner. The trial court in legal effect affirmed the decision of the board and commissioner. As the record is now before us, we will review it under the assignments of error challenging the conclusions of law and the sufficiency of the evidence to support the findings of the board and the commissioner. The competency of the evidence will be considered only in connection with the sufficiency of the evidence as a whole, and, if there is reasonable and substantial competent evidence to support such findings, they will not be disturbed. Day et al. v. Sioux Falls Fruit Co., 43 S. D. 65, 177 N. W. 816; Vodopich v. Trojan Mining Co., 43 S. D. 540, 180 N. W. 965; Dependents of Shaw v. Harms Piano Co., 44 S. D. 346, 184 N. W. 204; Wakefield v. Warren-Lamb Lumber Co., 46 S. D. 510, 194 N. W. 835; Wieber v. England et al, supra.

██ ██ Appellant claims the evidence is insufficient in two particulars; namely: First, that it does not show that deceased was acting in the course or within the scope of his employment at the time he met his death, because there is no proof that he was out upon any mission for appellant, in the discharge of any duty as an employee, or in the course or scope of his employment, but that he must have been out upon private business of his own, and for that reason the company is not liable; second, that the evidence does not show that claimant, Mary J. Leach, was a dependent upon deceased at the time of his death.

The board of arbitration found against appellant in both particulars. Under the Workmen's Compensation Law the employer

is bound to pay compensation in the manner and to the persons named in section 9458, R. C. 1919, where the death is by accident arising out of and in the course of employment. There is no substantial dispute as to the evidence. The manner of death is not disputed, but that it arose out of and in the course of his employment is disputed. Appellant maintains an office in Aberdeen, and in the evening of December 2, 1924, the day preceding the death of Leach, there was a meeting of the employees of the company, and it was arranged that deceased should go to McLaughlin the following day on business for the company, and, according to the arrangements then made, he was expected to leave on the morning train leaving Aberdeen about 6 o'clock. He failed to leave as expected, and about 1 o'clock in the afternoon of the 3d, the day he was killed, he was in the company's office, and in a conversation with a friend, Clarence Walker, in the presence of one of the employees he said that he was going out to Hosmer to sell an engine, and was also going to stop at Ipswich, Beebe, and Roscoe. The three stations last named are stations on the railroad between Aberdeen and McLaughlin, and Hosmer is in the general direction of McLaughlin on a branch line a short distance north of Roscoe. McLaughlin is distant from Aberdeen to the northwest more than 100 miles. In the conversation with Walker there was something said about Walker going with deceased to Hosmer, and deceased said he did not expect to be back that night.

After this conversation, deceased left the office, got into a Ford coupe and drove toward the Yellowstone Highway, a state trunk highway passing through McLaughlin. This was the last seen of him alive. About 3:30 the same afternoon he was found dead along the Yellowstone Highway about 11½ miles west of Aberdeen near a wrecked Ford coupe, which had run off the highway embankment into a ditch, and turned over. He was apparently alone at the time of the accident. In the car was found a suitcase containing wearing apparel, and a portfolio containing papers, letters, and matters pertaining to company business. There is no evidence that there were any papers or effects pertaining to private business of his own. The car, when it left the highway and was wrecked, was coming toward Aberdeen. There is no evidence that he met any one or transacted any business after leaving the office at Aberdeen, and, except such inferences as may be

drawn from the circumstances, there is no evidence of where he had intended to go, why he was returning, nor on what business he was engaged when the accident occurred. There is proof that the company had no business for attention by deceased at any of the stations named other than McLaughlin, and there is also evidence that employees of the company were forbidden to use their own cars in company business. For some time immediately preceding the accident, however, the company furnished to deceased a Chevrolet car owned by the company, and deceased had been in the habit of driving it on the company's business. The day before the accident deceased had informed an employee of the company that he could sell the Chevrolet coupe for $250, but that he would have to sell it on time. This was objected to; the price being satisfactory, but the company being unwilling to sell on time. Deceased then purchased the Chevrolet car, and gave his check for $250, and this check was in possession of the company at the time of the accident. Deceased was employed by the month, and his wages were paid for the first three days of December, which included the day of his death. Appellant claims that this is insufficient to show that the death arose out of and in the course of his employment.

Deceased, being a traveling salesman and collector, it is not as easy to determine when he was acting within the course of his employment as if he had a regular place of employment with fixed hours of service. Such employment is necessarily without fixed hours or place of service, and no doubt involves some discretion in matters of time and place. Such employee would be in the course of his employment while traveling to and from a point where business for the company calls him, in conveyances furnished or allowed to be used by the company. An automobile was not a forbidden conveyance, nor was he forbidden to drive a car himself as a means of travel, and up until the day preceding his death the company had furnished him with a car to use and drive. True, there was a rule forbidding the use of one's own car on behalf of the company, but this rule concerned the title, and not the character, of the conveyance. The reason for this rule is not given, but it could not have been to insure greater safety. The fact that he was driving his own car does not put him without the scope of his employment if he was in fact engaged in the com-

pany's business, but it is a circumstance tending to show that he was not so engaged. There are few, if any, other circumstances showing that he was engaged in business of his own. He had planned to go to McLaughlin for the company. He had planned to go on the morning train, but had not done so. This was known to the company's office at Aberdeen the next day, and no objection was made. He left the company office when he started out, and went towards McLaughlin, and stated he would not be back that night. If he had private business at stations on the way that might account for his taking his own car, but if his ultimate destination was McLaughlin on the business of the company, and no objection was made to his mode of travel or stops to be made on the way, we do not think that would put him out of the course of his employment. He had company papers with him, and was apparently equipped to serve the company in due course of the trip. Why he was returning to Aberdeen is not, and cannot be, explained, but that fact is not controlling, for there might be many reasons consistent with faithful service which would require his return. So far as the record shows, he was employed, and his services were satisfactory up to the moment of his death. His wages were paid up to and including the day of his death. He was killed during usual working hours when he might be expected to be employed by the company. He was on a road leading to a place where he had been sent by the company. He left from the company's office with papers concerning the company's business, and no effort was made to show these papers were not concerned with the McLaughlin business to which he had been sent, all of which are circumstances tending to show due course of employment. Opposed to this, there is but little to show he was on other business. We cannot say the findings of the board of arbitration are not supported by a preponderance of the evidence on this point.

■■ Second. Does the evidence show that Mary J. Leach, his mother, was a dependent within the meaning of subdivision 2, § 9458, R. C. 1919? That section provides that, where no compensation is payable under subdivision 1, pertaining to a wife and children, compensation shall be paid to a parent who is "dependent upon him for support at the time of the accident."

Deceased was unmarried, and lived in a rented home with his mother, his sister, and her husband. The family expenses were

not kept separate, but deceased paid part of the expenses; just what part is not certain. The mother (applicant here) says "the expenses were divided in two," and "we" (meaning herself and deceased) "paid half." Since the death of her son she has continued to live in the same house with her daughter and son-in-law, and pays her proportion of the family expenses. On direct examination, she said deceased was her sole means of support, but she no where details what support she had been receiving or upon what she based her expectation of continued support. She then had $2,000 in money out at interest, and was, at the time of deceased's death, 75 years of age, and a cripple. She received a large amount of insurance upon deceased's life, and after his death was abundantly able to support herself. While some of her answers seemed to be evasive, and the evidence of past support and future expectations of support is not given in detail, we think there is sufficient evidence of her dependency at the time of John's death to support the findings of the board of arbitration. If greater detail was desired so that a more accurate test could be made, it was the duty of appellant to elicit the details on cross-examination. Deceased made liberal provision for his mother's future support and comfort in case of his death by carrying large insurance policies in her favor. This insurance has made compensation from the employer unnecessary for her future support, but it does not affect her right to compensation, since the statute provides for compensation to one who is "dependent * * * at the time of the accident."

To give full and practical effect to the Workmen's Compensation Law, technical rules of procedure will be avoided. The arbitration feature of the law is important as a means of avoiding delay and establishing a simple, speedy, less formal, and summary method of procedure, unhampered by formal legal rules for adjustment of such questions between employer and employee. Day v. Sioux Falls Fruit Co., 43 S. D. 65, 177 N. W. 816; Wieber v. England, 52 S. D. 72, 216 N. W. 850. The evidence should be carefully weighed by a reviewing court in order that an employer may not be compelled to pay spurious claims and be subjected to burdens not contemplated by the act; on the other hand, just claims should be paid, and the employer should not escape the burdens imposed by his contract. The board of arbitration and industrial

commissioner are not required to be, and presumably are not, lawyers or learned in the law, and evidence received in good faith and convincing to the layman should not be rejected simply because it has not been received under safeguards prevailing in courts of justice.

There are facts in this case which may seem to make the burden imposed unnecessary and to some extent unjust. Deceased's death occurred under such circumstances as to preclude any suspicion of negligence on the part of the employer; that he was engaged in his employer's business is shown only by circumstances; and the dependency of the mother is not as explicit as might be, but these facts do not affect the legal rights of the parties. If deceased was killed by accident in the course of his employment, and his mother was a dependent as found by the board of arbitration, then the award is just. We cannot say the findings are not supported by substantial competent evidence.

The judgment and order appealed from are affirmed.

POLLEY, SHERWOOD, and BROWN, JJ., concur.

CAMPBELL, J. (dissenting). Section 9437, R. C. 1919, provides for compensation for injury or death by accident "arising out of and in the course of employment." Subdivision 2, § 9458, R. C. 1919, provides inter alia that, in event of death, no widow or child, surviving, compensation may be paid to a parent, provided the deceased employee leaves a parent who was "dependent upon him for support at the time of the accident."

I do not believe that the evidence in this case is sufficient to show that the mother of decedent was dependent upon him for support at the time of the accident. In fact, it seems to demonstrate quite conclusively that she was not.

Granting that a Workmen's Compensation Act ought to be construed with the utmost liberality in favor of the employee and his dependents (and surely the prior decisions of this court have approached the ultimate in such liberality), nevertheless it must be conceded that the mere fact that an accident has occurred is hardly sufficient in and of itself, without more, to require payment of compensation under the act. In view of the general object sought to be attained by these acts, and under the express words of section 9437, R. C. 1919, I venture to think that it is neither un-

reasonable, nor unduly lacking in liberality, to require a plaintiff seeking compensation under the act for an accident to show, as a codition precedent to liability, that such accident was one "arising out of and in the course of employment." In the instant case there seems to me to be an utter lack of proof of that element. It is of the essence of plaintiff's cause of action, and should rest upon something more than mere speculation and conjecture.

In this case there is admittedly an entire absence of any direct or positive testimony that plaintiff's intestate, at the time of the accident was engaged upon or in the course of any employment or duty for the defendant. It is the hypothesis of the plaintiff that he was so engaged. It would be pointless further to review the testimony here. It consists entirely of the existing surrounding and collateral facts and circumstances. It seems to me that the utmost that can be said as to such circumstances, making all concessions in plaintiff's favor, and indulging all liberality, is this, some of the circumstances are consonant with plaintiff's hypothesis. But I think it must further be said that none of those consonant circumstances rise to the dignity of proof, or are sufficient to establish the truth, or even the probable truth, of such hypothesis. Beyond this, it seems to me true in this case that a greater number of the surrounding circumstances point much more persuasively to the view that plaintiff's intestate, at the time of the accident, was engaged in the course of a mission of his own, and not in the performance of any duty connected with his employment by defendant. It further seems to me that, even those circumstances consonant with plaintiff's hypothesis are equally consonant with this view, while, per contra, several of the circumstances lending strong support to this view are entirely unsusceptible of a reasonable explanation upon plaintiff's hypothesis.

The case of Kansas City So. Ry. Co. v. Jones, arising in Texas, involved damages claimed under the Federal Employers' Liability Act (45 USCA, §§ 51-59; U. S. Comp. St., §§ 8657-8665) for the death of plaintiff's intestate. Judgment below was for the plaintiff. The case then ran a stormy and troubled career in the state courts, being first reversed, then affirmed, then reversed a second time by the Court of Civil Appeals, and thereafter affirmed for a second time by the Supreme Court of Texas. See (Tex. Civ. App.) 282 S. W. 309, at page 314; (Tex. Civ. App.) 282 S.

W. 309, at page 315; (Tex. Civ. App.) 287 S. W. 304; (Tex. Com. App.) 291 S. W. 528. Writ of certiorari issued from the Supreme Court of the United States, and in the course of an opinion (48 S. Ct. 308, 72 L. ed —, filed March 19, 1928) reversing this same judgment for the third, and presumably last, time, Mr. Justice Holmes said:

"Nothing except imagination and sympathy warranted a finding that the death was due to the negligence of the petitioner rather than to that of the man himself."

In the instant case I have been unable to discover any other or greater warrant for the finding that plaintiff's intestate at the time of the accident was in the course of his employment rather than upon a mission of his own.

Entertaining the view that the essential elements of plaintiff's case ought to have somewhat more substantial support, I regret to find myself unable to concur with my brethren in this case. I think the judgment appealed from should be reversed.