(No. 5754.  December 19, 1931.)

MRS. ROBERT RUE MURDOCH, Respondent, v. HUMES
& SWANSTROM, Employers, and MARYLAND CASU-
ALTY COMPANY, Surety, Appellants.

[6 Pac. (2d) 472.]

James F. Ailshie, Jr., and J. H. Andersen, for Appellants.

460

Soule & Spalding and H. W. Soule, for Respondent.

GIVENS, J.—The sole question involved in this appeal is whether the accident which caused the death of Murdoch, an auto mechanic employed by Humes & Swanstrom, employers operating a garage and machine-shop, arose out of and in the course of his employment.

The specific point made by appellant being that the deceased had stepped aside or departed from his employment at the time of the accident. The Industrial Accident Board, and the district court concluded otherwise.

The material findings of the board are as follows:

"That on the said 19th day of September, 1929, one Robert Rue Murdoch, now deceased, was in the employ of the defendants, Humes & Swanstrom, as the foreman of their shop in said Village of Ashton, and had been so in their employ for approximately five years; that as the foreman of the said defendants, Humes & Swanstrom, it was the duty of said Murdoch to have full charge of all mechanical work coming into the shop; or being called for outside the shop, to look after the interests of the shop from the standpoint of sales of parts, new and second hand automobiles, and of anything that was a benefit to the shop and firm, and to make the business pay and have a good reputation, to go where ever the public asked for a mechanic, to answer all questions by the public regarding the business at any time calls for that purpose came into the shop, ·to go out and care for wrecked automobiles and other machines; that when he went out on trips for his employers, he was paid for the time he was on the road going to and from the place where work was to be done.

"That on the morning of said 19th day of September, 1929, one George W. Zarn, who had charge of some elevators operated by certain grain dealers, came to the place of business of the defendants, Humes & Swanstrom, with a part of a gas engine that needed repair; that one Freeman A. Humes, one of the members of the firm of Humes & Swanstrom, defendants herein, helped said Zarn to repair the part of the gas engine; that a few minutes after said part was repaired the said Murdoch, now deceased, came to the shop to commence work and at the request of said Zarn, the said Freeman A. Humes, above mentioned, instructed the said Murdoch, now deceased, to go to Warm River, the place where the gas engine, from which the part repaired by Zarn and Humes had been taken, was located and replace the repaired part on the engine, telling him to 'go in Zarn's car.'

"That thereupon said Zarn and said Murdoch entered the car which the defendant Humes had referred to as Zarn's car and proceeded on their way to Warm River with Zarn

driving the car; that said car was the property of said George W. Zarn and was known as a Whippet Coach; after said Zarn and said Murdoch, now deceased, had proceeded a little way on the road to Warm River, Murdoch remarked to Zarn that he had never driven a Whippet car and indicated that he would like to try to do so; that Zarn said to him 'Get under here and take it'; that thereupon said Murdoch took Zarn's place as driver of the automobile and Zarn took the place in the automobile Murdoch had occupied and Murdoch proceeded to drive the automobile; that after they had proceeded with Murdoch driving until they came to a hill about four miles from Ashton, and while the automobile was being driven at a rate of speed estimated between 30 and 35 miles an hour, Murdoch allowed the automobile to coast down the hill and run into a streak of loose gravel from three to four feet wide and one hundred fifty feet long and four to five inches deep; that when the automobile struck said loose gravel it turned over throwing Zarn clear and landing on its side and on Murdoch's head and body; that from the injuries received by Murdoch, as a result of the car landing on him, he died within a short time after he was released and on said 19th day of September, 1929.''

These findings closely and accurately follow the undisputed evidence, and certain evidence brought out by appellants on cross-examination of Humes, one of deceased's employers, amplifies and elucidates Finding No. 4.

The witness Humes testified:

''Q. Do you mean you could drive the third man's car without getting the consent and authority of the other man? A. I would get the power from the man and pass it on to Mr. Murdoch.

''Q. Some one obtained the consent of the third party? A. As a rule.

''Q. As a rule? A. Sometimes I wouldn't be at the shop and possibly things would transpire when I was away.

''Q. In that case Mr. Murdoch would get the consent and authority? A. Yes.

"Q. In other words, you or someone representing the shop would have to get authority, express or implied authority if it happened to be someone you knew very well, to drive the car? A. Yes. . . . . "

"Q. In other words, he (Murdoch) had no manual labor to perform after he left your shop at Ashton, until he reached Warm River, did he? A. Probably not manual, but may I just divert a little?

"Q. I would object to it."

Mr. Worstell: "Don't divert—if counsel objects, just answer the questions."

Mr. Ailshie: "Q. In other words, he had nothing to do during the time that he was traveling from Ashton to Warm River except to sit in the car?

Mr. Sorenson: "I think that is objectionable from this viewpoint, that it is an assumption that he says that he had nothing else to do."

Mr. Worstell: "I will overrule the objection. The witness may answer."

"A. Yes, he did.

By Mr. Ailshie: "Q. What did he have? A. He was still in my employ and every second of his time no matter what he figured on, any knowledge that he gained belonged to me.

"Q. He was in your employ? A. Yes.

"Q. Will you tell me what he had to do in your employ during that time he was riding out to Warm River? A. Yes. He was riding in a car that was a competitor of mine and any feelings or actions that he could derive from that car to enlighten me on my competitive sales he would let me know.

"Q. He would let you know? A. Yes.

"Q. And he was riding in that for the purpose of observing? A. Absolutely.

"Q. Do you know whose car that was—was it Mr. Zarn's? A. Supposedly to be his car.

"Q. That is all."

Appellant contends that when Murdoch took the wheel, he stepped out of his employment.

The general rule applicable to scope of employment is stated in *Zeier v. Boise Transfer Co.*, 43 Ida. 549, 254 Pac. 209, 210:

" 'It is essential to the right to compensation that the injury shall have been received in the course of the workmen's employment; that it shall have been received while he was doing some act reasonably incidental to his work. An accident or injury is so received while it occurs while he is doing what a man in like employment may reasonably do within the time during which he is so employed, and at a place where he may reasonably be during that time.

" 'Course of employment' includes acts in which the employer has acquiesced, though they are not done in a strict performance of the employee's duties. An Employee is not, like a part of a machine operated by him, fixed to precisely the mechanical movements he must perform in order to discharge his industrial function. He may do whatever a human being may reasonably do while in the performance of his duty without such acts placing him outside of the course of his employment.' "

And as said in *Stakonis v. United Advertising Co.*, 110 Conn. 384, 148 Atl. 334, 336:

"An injury arises in the course of the employment when it takes place (a) within the period of employment (b) at a place where the employee may reasonably be, and (c) while he is reasonably fulfilling the duties of the employment or doing something incidental to it."

See, also, *Pacific Indemnity Co. v. Industrial Acc. Com.*, 105 Cal. App. 535, 288 Pac. 129, 130.

Keeping in mind the above quoted testimony, and considering whether the deceased, in driving the car, was within his expressly directed duties, as well as incidental employment, the following distinctions and conclusions are comparable:

"The services performed by Murphy in driving Burke to Merced were exceptional and were not within the usual scope of his employment as a city salesman. Nevertheless,

it may properly be inferred from the evidence that these services were connected with his employers' business, were of benefit to the employers and not personal to the employee, and were performed on behalf of the employers at the implied, if not express, request of their sales manager, Mr. Crogan. Under these circumstances the services were within the actual scope of Murphy's employment, and the fact that they were outside of the usual scope of his employment is immaterial." (*Pacific Indemnity Co. v. Industrial Acc. Com., supra.*)

In *Walker v. Hyde*, 43 Ida. 625, 253 Pac. 1104, and *Baldwin v. Singer Sewing Machine Co.*, 49 Ida. 231, 287 Pac. 944, the employer had not supplied the conveyance for the employee, or directed him to go in it. In *Utah Copper Co. v. Industrial Com.*, 62 Utah, 33, 33 A. L. R. 1327, 217 Pac. 1105, the employee was hired to act as brakeman, not fireman, and was not as fireman performing any duty expressly directed, as herein.

The employer had not told Murdoch not to drive the car, but to "go in it," as consistent with an implication that he was to drive, as that he was not (*Klettke v. C. & J. Commercial Driveaway, Inc.*, 250 Mich. 454, 231 N. W. 132; *Union Oil Co. v. Industrial Acc. Com.*, 211 Cal. 398, 295 Pac. 513; *Ryan v. Industrial Com.*, 89 Colo. 393, 3 Pac. (2d) 300; *Leach v. J. I. Case Threshing Machine Co.*, 53 S. D. 13, 219 N. W. 884), and furthermore, it was part of his general duties to "observe" and "enlighten" his employer as to competitors' cars, which the fatal car was, and any "knowledge he gained belonged" to his employer.

In *Lucky-Kidd Min. Co. v. State Industrial Com.*, 110 Okl. 27, 236 Pac. 600, the employee clearly left his employment, and was doing nothing he was directly or impliedly directed to do for his master when injured.

Appellants contend that *Maryland Casualty Co. v. Industrial Acc. Com.*, 39 Cal. App. 229, 178 Pac. 542, does not support respondent's position because the court therein said.

"No dispute is made but that, in so far as the choice of an automobile was concerned, it was immaterial to the company what machine was used and that whatever selection was made in that regard the company approved of it."

The same statement is readily applicable herein. The master did not say who was to drive; he merely said, "go in Zarn's car," and it must also be borne in mind that Murdoch here while driving was in a position to "observe" and later "enlighten" his master, except for the fatality, as to the performance, etc., of the car in question. Thus Murdoch was engaged not in doing something merely and slightly "incidentally" of benefit to his master; but something expressly, though generally, enjoined.

"An accident arises 'in the course of the employment' if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." (*Bryant v. Fissell*, 84 N. J. L. 72, 86 Atl. 458, 460. See, also, *In re Stewart*, 49 Ida. 557, 290 Pac. 209, 211; *United States Fidelity & Guaranty Co. v. Loyd*, (Tex. Civ. App.) 288 S. W. 662.)

4 Thompson, Commentaries on the Law of Negligence, sec. 3749, when the entire paragraph is read, supports our conclusion. It says in part:

" . . . . But here the line ought not to be drawn too tightly, against the servant; if he is acting in good faith and in the general scope of his employment, he will not be put in the category of a stranger or volunteer. . . . . "

The following cases afford examples of sufficiently similar situations to clearly sustain the conclusion reached herein: *Constitution Indemnity Co. v. Shytles*, 47 Fed. (2d) 441; *Pacific Employers' Ins. Co. v. Industrial Acc. Com.*, 79 Cal. App. 195, 249 Pac. 33; *Payne v. Industrial Acc. Com.*, 84 Cal. App. 657, 258 Pac. 620; *Lamm v. Silver Falls Timber Co.*, 133 Or. 468, 277 Pac. 91, 286 Pac. 527, 291 Pac. 375; *Jackson v. Euclid-Pine Inv. Co.*, 223 Mo. App. 805, 22 S. W. (2d) 849; *Wahlig v. Krenning-Schlapp Grocer Co.*, 325 Mo. 677, 29 S. W. (2d) 128; *Pelletier's Case*, 269 Mass. 490, 169

N. E. 434; *Parrish v. Armour & Co.*, 200 N. C. 654, 158 S. E. 188; *Schmiedeke v. Four Wheel Drive Auto Co.*, 192 Wis. 574, 213 N. W. 292; *Petroleum Casualty Co. v. Green*, (Tex. Civ. App.) 11 S. W. (2d) 388, followed in *Federal Surety Co. v. Ragle*, (Tex. Civ. App.) 25 S. W. (2d) 898, affirmed in *Federal Surety Co. v. Ragle*, (Tex. Com. App.) 40 S. W. (2d) 63; *Messer v. Manufacturers Light & Heat Co.*, 262 Pa. St. 5; 106 Atl. 85; *Sexton v. Public Service Com. of City of New York*, 180 App. Div. 111, 167 N. Y. Supp. 493; *Stockley v. School Dist. No. 1*, 231 Mich. 523, 204 N. W. 715.

Murdoch was not only not forbidden to drive the car, but was under the circumstances herein disclosed, clearly within the general line of his duty in driving it, to concededly go and perform his duties.

"Respondent argues that the deceased was acting against orders. The only evidence touching this was the testimony of respondent's foreman, who swore that it was the custom for Stewart to operate the tractor when and where he was directed by the foreman in charge. There is no evidence that he was ever in terms forbidden to operate it when he met his death. An energetic, interested workman often anticipates orders and accomplishes what is patently desired before the foreman speaks." (*In re Stewart, supra.*)

In *Leach v. J. I. Case Threshing Machine Co.*, 53 S. D. 13, 219 N. W. 884, 886, the court said: "An automobile was not a forbidden conveyance nor was he forbidden to drive a car himself as a means of travel and up until the day preceding his death the company had furnished him with a car to use and drive."

See, also, *Ex parte Majestic Coal Co.*, 208 Ala. 86, 93 So. 728; *Stevens v. Industrial Acc. Com.*, 179 Cal. 592, 178 Pac. 296; *Press Pub. Co. v. Industrial Acc. Com.*, 190 Cal. 114, 210 Pac. 820; *Kinsman v. Hartford Courant Co.*, 94 Conn. 156, 108 Atl. 562; *Heinze v. Industrial Com.*, 288 Ill. 342, 123 N. E. 598; *Hafer Washed Coal Co. v. Industrial Com.*, 295 Ill. 578, 129 N. E. 521; *A. L. Randall Co. v. Industrial Com.*, 305 Ill. 558, 137 N. E. 435; *National Biscuit Co. v.*

*Roth,* 83 Ind. App. 21, 146 N. E. 410; *City of Milwaukee v. Industrial Com.,* 185 Wis. 311, 201 N. W. 240.

The board was justified in concluding from the evidence that in the particular act, i. e., driving the automobile in which he was killed, deceased was furthering his master's interest and carrying out part of his duties as employee; hence, entitled to compensation.

Judgment affirmed; costs to respondent.

Lee, C. J., and Budge, Varian and McNaughton, JJ., concur.