This proceeding was instituted by respondent, Jessie MacKenzie, to recover compensation for the death of her husband. On June 9, 1932, and for some years prior thereto Niel MacKenzie, deceased, had been employed by appellant, Oregon Short Line Railroad Company, in the operation of a generator plant in which acetylene gas was generated and conducted by pipes to the various shops of appellant company in its yards at Pocatello, Idaho. At the side of the generator plant building there was located a sump or sludge pit into which the refuse from the generators was carried by means of a concrete conduit from the inside of the building. For a period of about nine years, and up until November, 1931, it had always been a part of MacKenzie's duties to clean out the sludge pit at intervals of about one month, which cleaning work was done by running water and steam into the pit from the generator plant, and *Page 484 
then siphoning the softened refuse into a car on a near-by track. The work of MacKenzie in operating the generator plant and cleaning the sludge pit was under the supervision of the mechanical department of the appellant company. In November, 1931, the store department of the appellant company was directed to take over the work of cleaning the sludge pit. From that time on, and until the date of the accident, June 9, 1932, it appears that a man from the store department always handled the work of cleaning the pit, under the supervision of the foreman of the store department. The hose that was used to run the water into the sludge pit, on the occasions when it was cleaned, was kept inside of the generating plant and the faucet controlling the flow of water was inside of the plant. It had been the custom of the man cleaning the pit after November, 1931, to have MacKenzie assist him in passing the hose out of the building to the pit, and then having MacKenzie turn the water on. On the day in question, June 9, 1932, MacKenzie had assisted the man who was doing the cleaning, but only in the particulars stated. When the store department assumed the task of cleaning the pit it changed the method used by discontinuing the use of the siphon and installing a pump. The first pump that had been used proved to be too small to handle the work satisfactorily, so shortly before the date of the accident a larger pump had been substituted to handle the work. On the day in question, after the man from the store department had started cleaning the pit, MacKenzie came out of the generator plant and talked with him a minute or two about how the pump was operating, glanced into the pit and returned to the inside of the building. Approximately an hour later the operator of the pump noticed that it was in need of oil and left the place for a period of about five minutes to go to the oil-house for some oil. While he was away MacKenzie came out of the building, passed the pump and stepped on to the back of one of the trap-doors turned back from the opening into the sludge pit. The back side of the open trap-door was covered with slime and, as a result, MacKenzie's feet slipped and he *Page 485 
fell into the pit. The sludge had been thinned with water and heated by the steam, so that when MacKenzie fell into the pit and was submerged in the refuse and water he suffered a burn covering about eighty per cent of his body. On the same date, June 9, 1932, MacKenzie died as a result of the accident so sustained. The appellant refused to allow compensation, on the ground that the accident did not arise out of and in the course of deceased's employment. On hearing before the Industrial Accident Board that body allowed compensation, finding that the death of Niel MacKenzie "was the result of personal injuries by accident arising out of and in the course of his employment." On appeal to the district court the award of the board was affirmed, and the judgment affirming the award is now before us for review.
There is but one real question for decision in this case: Did the accident which caused the death of the deceased, Niel MacKenzie, arise out of and in the course of his employment?
Appellant has made various assignments of error, but the answer to this one question is decisive. Appellant takes the position that the deceased had been relieved of his duty of cleaning the sludge pit several months prior to the time that he met his death; that on the 9th day of June, when he slipped and fell into the pit, which caused his death, he was not performing any duty in connection with his employment, but came to the pit solely for the purpose of satisfying his own personal curiosity, and not while he was reasonably fulfilling the duties of his employment or something incidental to it. That portion of the findings of fact of the board, which are pertinent and material to a determination of the question before us, are:
 "V.
". . . . that after the emptying of said pit or sump was taken over by the 'store department' it was the custom of Neil MacKenzie, now deceased, to help the laborer to whom was assigned the task of emptying the pit, to pass the rubber hose out through the opened doors and to turn on the water; *Page 486 
that because the task of emptying the said pit or sump had been his duty prior to the time the emptying was taken over by the said 'store department' and because the method of emptying was changed, the said Neil Mackenzie, now deceased, always was greatly interested in observing the method used and its efficiency; that the laborer while emptying the tank with the pump had more or less trouble with the pump and on such occasions would tell said Mackenzie that it 'was not doing so good.'
 "VI.
"That on the 9th day of June 1932, the laborer of the employer, Oregon Shortline Railroad Company, to whom the task of emptying the pit was usually assigned, was instructed to empty the pit; that he thereupon opened the two trap doors over the east half of the said pit by laying them bottom up on top of the doors covering the west half and with the assistance of the said Neil Mackenzie, now deceased, put the water hose into the pit and had the said Mackenzie turn on the water, turned the steam into the pit and started the pump and proceeded to empty the pit; that after the pump had run for some time the said Neil MacKenzie, now deceased, came out of the generator building toward the sump and talked with the said laborer for a minute or two about how it was working, looked at the sump and then returned to the generator building; that at said time the pump was located west of the sludge tank, opposite the trap door covering the southwest quarter of the tank and its runner just touching the west walls of the tank; that after said pump had been operating about an hour it became dry for want of lubrication and started to jump and jerk and in order to get oil to lubricate the pump the said laborer left it operating and went to get some oil at an oil house which was located at a distance of about fifty yards from the generator plant and on said errand was gone for a period of more than five minutes; that during the time the said laborer was away from the pump on his errand the said Neil Mackenzie, now deceased, came out of the generator building, went toward or by the running pump, stepped on the trap *Page 487 
door which was turned backward and was lying over that door covering the southwest quarter of the tank and the upturned bottom of which was slimy and slippery; that when said Mackenzie, now deceased, stepped on said slimy and slippery trap door his foot slipped in the slime and he fell into the pit; that at the time the said Neil Mackenzie fell into the pit the sludge had been heated with steam and thinned with water and steam; that the body of the said Neil Mackenzie sank below the top of the water in the sludge pit and in endeavoring to hold himself above the sludge and water, the said Mackenzie grasped and held onto the hot steam pipe through which steam was at that time passing into the pit; that as a result of holding onto said hot steam pipe the hands of said Mackenzie were severely burned and as a result of being submerged in the sludge he had a burn covering about 80% of his body; that as a result of said burns the said Neil Mackenzie died on the said 9th day of June, 1932.
 "VII.
"That the death of said Neil Mackenzie was the result of personal injuries by accident arising out of and in the course of his employment with the defendant, Oregon Shortline Railroad Company."
It is to be noted that that part of finding number V, above quoted, is but a general finding of fact to the effect that from the time the task of cleaning the sludge pit was taken from deceased he was always greatly interested in the method used and its efficiency in emptying the same. The board has not stated in finding number VI, or anywhere else in its findings as to the particular reason or cause that prompted the deceased to leave the generator building on the 9th day of June when he went out to the pump and sludge pit and met his death. Rasmus Knudsen, the employee whose duty it was to operate the pump and empty the pit, had temporarily left the scene for the purpose of obtaining oil for the pump, which had gotten hot and was jumping and jerking for lack of oil. Appellant argues that by reason of the general finding made by the board in finding *Page 488 
number V, which is supported by competent evidence, coupled with the further fact that the deceased went to the pump and pit at the time he was injured, and the alleged statement made to R.H. Smith, a witness for appellant, a few hours before his death as to his reason for going to the pit, it is shown conclusively that he did not go there for the purpose of performing any duty pertaining to his employment, but to satisfy his personal curiosity.
It is most seriously contended on the part of appellant, that the contention made by claimant that the deceased went to the pit for other purposes than to satisfy his personal curiosity is conclusively foreclosed by findings numbers V and VI of the board and the statement made by deceased to R.H. Smith, claim adjuster for appellant, to which he testified as follows:
"I went in and saw Mr. Mackenzie and asked him if he were able to tell me how he happened to fall into the pit, and he told me that he went out of the side door at the plant where he worked and went around to the west side of the sump where the pump was located, and he was curious and anxious to see how the pump was working, as they were using a different method than they did at the time that he cleaned the sump out himself. He said that he was anxious to see whether they were going to be able to get to the bottom of the sump. He said after he had looked at the sump he then turned and stepped up onto the top of the closed portion to look down to see how near they were getting to the bottom of the sump, and as he did so his feet slipped out from under him and he slid into the sump. He said that he went under the fluid in the sump two or three times before he could get hold of anything. Then he stated that he got hold of the steam pipe located in the southeast corner of the sump and tried to pull himself out, and while he was in the act of trying to get out of the sump that somebody came and pulled him out."
And the further testimony of Mrs. George Rice, daughter of the deceased, as follows: *Page 489 
"Q. Were you with your mother at the time that Mr. Smith asked her what Mr. Mackenzie had said as to how the accident occurred?
"A. Yes.
"Q. And what did your mother reply?
"A. She told him just exactly what Dad told her, that he went to see how the work was coming and that he slipped and fell in."
With reference to these statements so strenuously relied upon by appellant, it is to be noted that the voice of Mr. MacKenzie has been stilled by death and he is not here to state his version of what was said and done. The alleged statement made to Mr. Smith took place about 5 o'clock in the afternoon of June 9th, Mr. MacKenzie dying about 9:45 that evening, so that the alleged statement was made but a few hours before his death, at a time when the burns which he sustained not only most seriously affected his body, but may have affected his mind as well. With reference to the statement made by Mrs. Rice, above quoted, as we view it, it is not inconsistent with a reasonable inference that could be drawn therefrom that her father went to the pit merely as an observer, or an inference that he went there to do something in the furtherance of his master's business. Claimant herein, the wife of deceased, specifically denies that she made any statement of any kind to Mr. Smith, as to what her husband had told her as to how the accident happened, except that she told him that her husband stated, "that he slipped and fell in." With reference to verbal admissions, it is the law that the same should be received with caution and subject to careful scrutiny, since no class of evidence is so subject to error or abuse. In 3 Jones Commentaries on Evidence, 2d ed., sec. 1070, p. 1969, referring to this particular class of evidence, it is said:
"It is an even more familiar rule that verbal admissions should be received with caution and subjected to careful scrutiny, as no class of evidence is more subject to error or abuse. Witnesses having the best motives are generally unable to state the exact language of an admission, and are *Page 490 
liable, by omission or change of words, to convey a false impression of the language used." (See, also, Ludberg v.Barghoorn, 73 Wn. 476, 131 P. 1165.)
In the final analysis it was for the board to decide the value and credit to be given this testimony. (Tieman v. Red TopCab Co., 117 Cal.App. 40, 3 P.2d 381.) If the deceased left the generating plant at the time in question and went to the pump and pit merely as an observer and to satisfy his curiosity, then he was not reasonably fulfilling any of the duties of his employment, or doing something incidental to it, and under Murdoch v. Humes Swanstrom, 51 Idaho 459,6 P.2d 472; Walker v. Hyde, 43 Idaho 625, 253 P. 1104; Zeier v.Boise Transfer Co., 43 Idaho 549, 254 P. 209, claimant would not be entitled to recover. But not every slight deviation from an employee's duty will deprive him or his dependents of the right to compensation under the compensation law. (Stratton v.Interstate Fruit Co., 47 S.D. 452, 199 N.W. 117.) In 1 Honnold on Workmen's Compensation, sec. 114, p. 396, it is stated:
"If a workman depart temporarily from his usual avocation to perform some act necessary to be done by some one for his master he does not cease to be acting in the course of his employment. He is then acting for his master not for himself. A rule of law which in such case would put an employee outside his usual course of employment, and so deprive him of his right to compensation for an injury suffered would punish energy and loyalty and helpfulness and promote sloth and inactivity in employees. It would certainly prove detrimental to industry, and such a spirit of disregard of the master's interest, if carried into all of the work, would in time cripple the industry. Besides, the rule would be impractical. One trade must occasionally overlap another, if the work is to go on expeditiously and productively. On the other hand, when the injury, though arising out of a risk of the business, if received while the employee has turned aside from his employment for his own purposes, and is not acting within the scope of his employment, no compensation can be given." *Page 491 
The same principle of law announced has been upheld in Idaho in Murdoch v. Humes Swanstrom, supra, and In re Stewart,49 Idaho 557, 290 P. 209. See, also, Hartz v. Hartford FaienceCo., 90 Conn. 539, 97 Atl. 1020; Ransdell v. International ShoeCo., 329 Mo. 47, 44 S.W. (2d) 1; Martucci v. Hills Bros. Co.,171 App. Div. 370, 156 N.Y. Supp. 833. So, that even though the deceased temporarily departed from his usual employment, if he did so to perform some act necessary to be done by someone for his master, or he did whatever a human being might reasonably do while in the performance of his duty at the time when he met with the accident that caused his death, he did not then cease to be acting in the course of his employment. This brings us down to the gist of the whole situation. What was the object or purpose of Mr. MacKenzie going to the pump and pit at the time when he met with the accident? Why did he go there? If he went there merely to satisfy his own curiosity the claimant cannot recover. On the other hand, if he went there to perform some act or duty that someone else should have done, or what he might reasonably do while in the performance of his duty in the furtherance of his master's business, his dependents can recover. The board failed to make a specific finding as to this most important fact, which it should have done, as to why MacKenzie went to the pit when he was injured, if the evidence is sufficient upon which such a finding can be made, and from the record we believe the evidence is sufficient to justify such a finding, either one way or the other. True, the board in finding number VII, above quoted, found that MacKenzie met his death by accident arising out of and in the course of his employment, which is but an ultimate conclusion of both law and fact, which might have been sufficient providing sufficient specific facts had been found. But in this case the specific fact which is controlling was not found by the board. The board is a fact-finding body; it heard and saw the witnesses when they testified, and examined the premises, and it was and is its duty, when such *Page 492 
can be done under the evidence, to make the necessary specific findings of fact which are controlling.
The judgment of the district court is therefore reversed, and the cause remanded to the Industrial Accident Board for the purpose of having the board make a specific finding as above noted, and conclude accordingly.
Costs awarded to appellant.
Budge, C.J., and Givens, J., concur.
Holden, J., concurs in the conclusion reached.